

**Alan D. Kaplan**
Partner
Phone: 212.592.1507
Fax: 212.545.3342
akaplan@herrick.com

December 28, 2021

<u>VIA FEDERAL EXPRESS</u>

Clerk's Office - Civil
United States District Court
John Joseph Moakley U.S. Courthouse
1 Courthouse Way - Suite 2300
Boston, MA 02210

Re:    *STAG Williamsport LLC v. BHN Associates LLC, et al.*, 21-cv-11958-NMG

Dear Sir/Madam:

Enclosed please find a certified copy of the State Court record in the above-referenced matter, which was removed from the Suffolk County Superior Court (Civil Action No. 2184CV02248). A copy of the State Court record was also electronically filed today.

Thank you for your attention to this matter. Please do not hesitate to contact me if you have any questions.

Very truly yours,

*/s/ Alan D. Kaplan*

Alan D. Kaplan

Enclosures

cc:    Counsel of Record (via ECF)

HF 14180134v.1

**HERRICK, FEINSTEIN LLP** • Two Park Avenue • New York, NY 10016 • Phone: 212.592.1400 • Fax: 212.592.1500

**COMMONWEALTH OF MASSACHUSETTS**
**SUFFOLK COUNTY CIVIL**
Docket Report

### 2184CV02248 Stag Williamsport, Llc vs. Bhn Associates, Llc et al

| | | | |
|---|---|---|---|
| **CASE TYPE:** | Contract / Business Cases | **FILE DATE:** | 09/30/2021 |
| **ACTION CODE:** | A08 | **CASE TRACK:** | F - Fast Track |
| **DESCRIPTION:** | Sale or Lease of Real Estate | | |
| **CASE DISPOSITION DATE:** | 12/14/2021 | **CASE STATUS:** | Closed |
| **CASE DISPOSITION:** | Transferred to another Court | **STATUS DATE:** | 12/14/2021 |
| **CASE JUDGE:** | | **CASE SESSION:** | Civil E |

| PARTIES |
|---|

| | | |
|---|---|---|
| **Plaintiff**<br>Stag Williamsport, Llc<br>One Federal Street<br>23rd Floor<br>Boston, MA 02110 | **Attorney**<br>Benjamin Matthew Greene<br>Arent Fox LLP<br>Arent Fox LLP<br>800 Boylston St<br>32nd Floor<br>Boston, MA 02199<br>Work Phone (617) 973-6100<br>Added Date: 09/30/2021 | 696850 |
| **Defendant**<br>Bhn Associates, Llc<br>240 Adar Ct.<br>Monsey, NY 10952 | **Attorney**<br>Alan D Kaplan<br>Herrick Feinstein LLP<br>Herrick Feinstein LLP<br>2 Park Ave<br>New York, NY 10016<br>Work Phone (212) 592-1507<br>Added Date: 12/05/2021 | 258280 |
| **Defendant**<br>First American Title Insurance Company<br>800 Boylston Street<br>Suite 2820<br>Boston, MA 02199 | **Attorney**<br>Scott C Owens<br>First American Law Group - Boston<br>First American Law Group - Boston<br>800 Boylston St<br>Suite 2820<br>Boston, MA 02199<br>Work Phone (617) 772-9272<br>Added Date: 11/01/2021 | 654406 |

| FINANCIAL DETAILS |
|---|

| Date | Fees/Fines/Costs/Charge | Assessed | Paid | Dismissed | Balance |
|---|---|---|---|---|---|
| 10/01/2021 | Civil Filing Fee (per Plaintiff) Receipt: 33113 Date: 10/01/2021 | 240.00 | 240.00 | 0.00 | 0.00 |
| 10/01/2021 | Civil Security Fee (G.L. c. 262, § 4A) Receipt: 33113 Date: 10/01/2021 | 20.00 | 20.00 | 0.00 | 0.00 |
| 10/01/2021 | Civil Surcharge (G.L. c. 262, § 4C) Receipt: 33113 Date: 10/01/2021 | 15.00 | 15.00 | 0.00 | 0.00 |
| | **Total** | **275.00** | **275.00** | **0.00** | **0.00** |

**COMMONWEALTH OF MASSACHUSETTS**
**SUFFOLK COUNTY CIVIL**
Docket Report

| | | INFORMATIONAL DOCKET ENTRIES | |
|---|---|---|---|
| Date | Ref | Description | Judge |
| 09/30/2021 | 1 | Complaint electronically filed. | |
| 09/30/2021 | 2 | Civil action cover sheet filed. | |
| 09/30/2021 | 3 | Plaintiff Stag Williamsport, Llc's Motion to appt spec process server | |
| 10/12/2021 | 4 | General correspondence regarding NOTICE OF DENIAL OF ACCEPTANCE INTO THE BUSINESS LITIGATION SESSION: This case came before the court for review after initial filing in the Business Litigation Session. However, after review, acceptance into the Business Litigation Session is denied. This case is referred to the Clerk's Office for reassignment.  Dated: Oct. 4, 2021  Notice sent 10/7/21 | Salinger |
| 10/12/2021 | | Civil action cover sheet mailed re: Complaint | |
| 11/01/2021 | 5 | Defendant First American Title Insurance Company's Assented to Motion to Enlarge Time to Respond to Complaint | |
| 11/01/2021 | | Attorney appearance On this date Scott C Owens, Esq. added for Defendant First American Title Insurance Company | |
| 11/02/2021 | 6 | Civil action cover sheet filed.

Returned re: Complaint (E-Filed) | |
| 11/04/2021 | | Case assigned to: DCM Track F - Fast Track was added on 11/04/2021 | |
| 11/10/2021 | | Endorsement on Motion to Enlarge Time to Respond to Complaint (#5.0): ALLOWED (dated 11/4/21) notice sent 11/8/21 | Mulligan |
| 11/29/2021 | 7 | Answer to original complaint

Applies To: First American Title Insurance Company (Defendant) | |
| 12/01/2021 | 8 | Plaintiff Stag Williamsport, Llc's Motion for order for defendant First American Title Insurance to deposit escrow funds into court | |
| 12/01/2021 | 9 | Response to plaintiff's motion for order to deposit escrow funds into court filed by First American Title Insurance Company | |
| 12/01/2021 | | Affidavit of no opposition | |
| 12/01/2021 | | Plaintiff Stag Williamsport, Llc's Notice and list of documents filed pursuant to Superior Court Rule 9A | |
| 12/05/2021 | | Attorney appearance On this date Alan D Kaplan, Esq. added for Defendant Bhn Associates, Llc | |
| 12/06/2021 | 10 | Defendant Bhn Associates, Llc's Notice of Filing of Notice of Removal to Us District Court (US Dist.# 21cv11958) | |



# COMMONWEALTH OF MASSACHUSETTS
## SUFFOLK COUNTY CIVIL
### Docket Report

| | |
|---|---|
| 12/14/2021 | REMOVED to the U.S. District Court of Massachusetts |
| 12/14/2021 | Case transferred to another court. |

I HEREBY ATTEST AND CERTIFY ON

Dec. 21, 2021 , THAT THE
FOREGOING DOCUMENT IS A FULL,
TRUE AND CORRECT COPY OF THE
ORIGINAL ON FILE IN MY OFFICE,
AND IN MY LEGAL CUSTODY.

MICHAEL JOSEPH DONOVAN
CLERK / MAGISTRATE
SUFFOLK SUPERIOR CIVIL COURT
DEPARTMENT OF THE TRIAL COURT

BY:

Deputy Assistant Clerk

| CIVIL ACTION COVER SHEET | DOCKET NO(S) **B.L.S.** 21.2248 | Trial Court Of Massachusetts Superior Court Department County: SUFFOLK |
|---|---|---|
| PLAINTIFF(S)<br><br>STAG WILLIAMSPORT, LLC | | DEFENDANT(S)<br>BHN ASSOCIATES, LLC, FIRST AMERICAN TITLE INSURANCE COMPANY, and *in rem* against CERTAIN FUNDS HELD IN ESCROW BY THE BOSTON OFFICE OF FIRST AMERICAN TITLE INSURANCE COMPANY |
| ATTORNEY, FIRM NAME, ADDRESS AND TELEPHONE Board of Bar Overseers number<br>Benjamin M. Greene, BBO# 696850<br>Arent Fox LLP, Prudential Tower, 800 Boylston Street<br>Boston, MA 02199-8004      (617) 973-6100 | | ATTORNEY (if known) |

Origin Code Original Complaint

*10/1/2021*

TYPE OF ACTION AND TRACK DESIGNATION (See reverse side) CODE NO. TYPE OF ACTION (specify) TRACK IS THIS A JURY CASE? * _____
___BK.1_____(B)☐Yes ☒No

The following is a full and detailed statement of the facts on which plaintiff relies to determine eligibility in to The Business Litigation Session.

This action arises from Defendant BHN Associates, LLC's ("BHN") failure to close on its purchase of property located at 3300 Wahoo Drive, Williamsport, Pennsylvania ("Subject Property") pursuant to Purchase and Sale Agreement ("P&S Agreement"). Despite Plaintiff STAG Williamsport, LLC's ("STAG") fulfillment of its obligations, BHN failed to proceed with the purchase of the Subject Property. Pursuant to the P&S Agreement, BHN deposited $300,000.00 in "Earnest Money" deposits and $150,000 in non-refundable closing "Extension Fees" with the Boston office of the First American Title Insurance Company ("FATIC") for FATIC'S Boston office to hold in escrow ("Escrowed Funds"). As a result of BHN's breach of the P&S Agreement, STAG is entitled to the Escrowed Funds. Notwithstanding BHN's default under the P&S Agreement, STAG has not received the Escrowed Funds.

This matter would benefit from expertise of the Business Litigation Section because it involves: (1) a dispute over $450,000; (2) *in rem* jurisdiction; and (3) interpretation of the parties' obligations under the both the P&S Agreement and a related escrow agreement.

The claims in this case fall within at least the following categories identified in Superior Court Directive 17-1: e.1 (claims involving breaches of contract) and k.1 (claims involving complex issues related to real estate).

* A Special Tracking Order shall be created by the Presiding Justice of the Business Litigation Session at the Rule 16 Conference.

PLEASE IDENTIFY, BY CASE NUMBER, NAME AND COUNTY, ANY RELATED ACTION PENDING IN THE SUPERIOR COURT DEPARTMENT.

"I hereby certify that I have complied with the requirements of Rule 5 of the Supreme Judicial Court Uniform Rules on Dispute Resolution (SJC Rule 1:18) requiring that I provide my clients with information about court-connected dispute resolution services and discuss with them the advantages and disadvantages of the various methods." Signature of Attorney of Record */s/ Benjamin Greene*
DATE:_09/30/21_____



I HEREBY ATTEST AND CERTIFY ON
Dec. 21, 2021, THAT THE
FOREGOING DOCUMENT IS A FULL,
TRUE AND CORRECT COPY OF THE
ORIGINAL ON FILE IN MY OFFICE,
AND IN MY LEGAL CUSTODY.

MICHAEL JOSEPH DONOVAN
CLERK / MAGISTRATE
SUFFOLK SUPERIOR CIVIL COURT
DEPARTMENT OF THE TRIAL COURT
BY:                                       Deputy Assistant Clerk

**1**

COMMONWEALTH OF MASSACHUSETTS

SUFFOLK, SS

SUPERIOR COURT
DOCKET NO.

*21 . 2248 - E*

---

STAG WILLIAMSPORT, LLC,

      Plaintiff,

v.

BHN ASSOCIATES, LLC, FIRST
AMERICAN TITLE INSURANCE
COMPANY, and *in rem* against CERTAIN
FUNDS HELD IN ESCROW BY THE
BOSTON OFFICE OF FIRST AMERICAN
TITLE INSURANCE COMPANY,

    Defendants.

*10/1/2021*

---

## VERIFIED COMPLAINT

### INTRODUCTION

This action arises from Defendant BHN Associates, LLC's ("BHN") failure to close on its purchase of property located at 3300 Wahoo Drive, Williamsport, Pennsylvania ("Subject Property") pursuant to Purchase and Sale Agreement ("P&S Agreement"). Despite Plaintiff STAG Williamsport, LLC's ("STAG" or "Plaintiff") fulfillment of its obligations, BHN failed to proceed with the purchase of the Subject Property. Pursuant to the P&S Agreement, BHN deposited $300,000.00 in "Earnest Money" deposits and $150,000 in non-refundable closing "Extension Fees" with the Boston office of the First American Title Insurance Company ("FATIC") for FATIC'S Boston office to hold in escrow ("Escrowed Funds"). As a result of BHN's breach of the P&S Agreement, STAG is entitled to the Escrowed Funds. Notwithstanding BHN's default under the P&S Agreement, STAG has not received the Escrowed Funds.

## PARTIES

1.      STAG is a Delaware Limited Liability Company with a principal place of business at One Federal Street, 23rd Floor, Boston, Massachusetts.

2.      BHN is a New York Limited Liability Company with a principal place of business at 240 Adar Ct., Monsey, New York.

3.      FATIC is a Delaware Corporation with a usual place of business at 800 Boylston Street, Suite 2820, Boston, Massachusetts.

## JURISDICTION

4.      This Court has jurisdiction over this matter pursuant to M.G.L. c. 212, § 4.

5.      In addition to personal jurisdiction, pursuant to M.G.L. c. 223A, § 3, over the defendants, this Court also has in-rem jurisdiction over the Escrowed Funds, which are held and controlled by the Boston office of FATIC.

6.      Venue is appropriate in Suffolk County pursuant to M.G.L. c. 223, § 8, because STAG and FATIC have usual places of business in Suffolk County, and Escrowed Funds are being held by FATIC's office located in Suffolk County.

## BACKGROUND

7.      On June 7, 2021, STAG and BHN entered into an agreement for the purchase and sale of the Subject Property for $13,500,000.00 ("P&S Agreement"). A true and accurate copy of the P&S Agreement is attached hereto as Exhibit A.

8.      As part of the P&S Agreement, STAG and BHN agreed to appoint the Boston office of FATIC to serves as their escrow agent for any funds provided by BHN, and subsequently entered into an escrow agreement with FATIC ("Escrow Agreement"). A true and accurate copy of the Escrow Agreement is attached hereto as Exhibit B.

2

9.     After executing the P&S Agreement, BHN deposited $200,000.00 with FATIC to be held in escrow.

10.    Following the conclusion of the P&S Agreement's "Study Period," BHN deposited an additional $100,000.00 with FATIC to be held in escrow, for a total of $300,000.00 in Earnest Money. The Earnest Money is held as part of the Escrowed Funds.

11.    In addition to the Earnest Money, BHN exercised rights pursuant to Section 1.5 of the P&S Agreement to extend the Closing Date for two separate periods of 15-days each and in each instance paid to FATIC a non-refundable Extension Fee in the amount of $75,000, for a total of $150,000 in non-refundable Extension Fees. Any Extension Fee was to be applied to the purchase price at Closing in accordance with the terms of the P&S Agreement but was otherwise non-refundable. The Extension Fees are held as part of the Escrowed Funds.

12.    Pursuant to Section 2.2 of the P&S Agreement:

> The Earnest Money shall be applied in payment of the Purchase Price at Closing, or, as provided in Section 12.2, disbursed to Seller in the event of a Buyer default as Seller's sole and exclusive remedy or disbursed to Buyer as provided in Section 12.1 or as otherwise provided in this Agreement.

13.    Pursuant to Section 12.2 of the P&S Agreement:

> If Buyer fails to perform in accordance with the terms of this Agreement and such failure continues for five (5) days following Seller's written notice thereof to Buyer, Seller shall, as its sole remedy, have the right to terminate this Agreement by delivering written notice to Buyer whereupon the amount of Earnest Money then on deposit shall be forfeited to Seller as liquidated damages (which shall be Seller's sole and exclusive remedy against Buyer), it being agreed between the parties hereto that the actual damages to Seller in such event are impractical to ascertain and the amount of the Earnest Money is a reasonable estimate thereof and shall be and constitute valid liquidated damages, at which time this Agreement shall be null and void and neither party shall have any rights or obligations under this Agreement except for the Surviving Obligations.

3

14.     Pursuant to Section 17.3 of the P&S Agreement:

> In connection with any litigation including appellate court proceedings arising out of this Agreement or related to the transactions contemplated hereby, the prevailing party shall be entitled to recover from the losing party its reasonable attorney's fees and costs incurred in enforcing its rights and remedies hereunder, including costs of collection prior to instigating litigation.

15.     Pursuant to the terms of the P&S Agreement STAG and BHN agreed to close on the sale of the Subject Property on August 23, 2021 ("Closing Date").

16.     On the Closing Date, BHN refused to close the sale.

17.     Rather BHN asserted that STAG had not provided an appropriate Tenant Estoppel Certificate or an appropriate Subordination, Attornment and Non-disturbance Agreement, but notably BHN did not provide a notice of default to STAG under the P&S Agreement.

18.     In response, STAG conveyed its position that, per the terms of the P&S Agreement, both of the documents it provided were acceptable, and that BHN had defaulted by refusing to close.

19.     Even though STAG believed it had no obligation to provide different versions of the documents, on August 25, 2021, STAG provided BHN with a new Tenant Estoppel Certificate and new Subordination, Attornment and Non-disturbance Agreement, both in forms that BHN had explicitly identified as acceptable.

20.     After receiving these documents, BHN still refused to close on the sale of the Subject Property.

21.     On August 30, 2021, by letter and email, STAG sent BHN a notice of Default, which stated:

> Seller hereby notifies Buyer that Buyer is breach of the Purchase Agreement by failing to deliver, or cause to be delivered, the Purchase Price to the Escrow Agent in accordance with the terms of

> the Purchase Agreement. If Buyer does not cure the aforementioned default and proceed to Closing within five (5) days of the date hereof, Seller shall terminate this Agreement and the Earnest Money shall be disbursed to Seller.

A true and accurate copy of the Notice of Default is attached hereto as <u>Exhibit C</u>.

22.    After receiving the Notice of Default, BHN still refused to close on the sale of the Subject Property.

23.    On September 7, 2021, by letter and email, STAG sent BHN a Notice of Termination, which stated:

> Seller hereby notifies Buyer that Seller is terminating the Purchase Agreement pursuant to Section 12.2 thereof. By notice dated August 30, 2021, Seller previously notified Buyer of Buyer's breach of the Purchase Agreement for failing to deliver, or cause to be delivered, the Purchase Price to the Escrow Agent. Buyer has failed to cure such breach within the specified cure period. Accordingly, Seller is electing to terminate the Purchase Agreement and is entitled to the Earnest Money on deposit with the Escrow Agent.

A true and accurate copy of the Notice of Termination is attached hereto as <u>Exhibit D</u>.

24.    The September 7, 2021 email, which transmitted the Notice of Termination, was also sent to FATIC, and included an instruction to FATIC's representative stating "per the attached, we have terminated the Purchase Agreement and are requesting that the funds on deposit with respect to this transaction be delivered to STAG as Seller."

25.    By letter, dated September 29, 2021, BHN: (1) rejected STAG's Notice of Termination; (2) sought to exercise its own right to terminate the P&S Agreement; and (3) requested that FATIC provide it with the Escrowed Funds.

26.    FATIC has not released the Escrowed Funds to STAG, nor has it notified STAG that such release will be forthcoming.

## COUNT I: BREACH OF CONTRACT AGAINST BHN

27.     Plaintiff re-alleges and incorporates each of the allegations of this Complaint as if fully set forth herein.

28.     Plaintiff and BHN entered into the P&S Agreement, a binding contract.

29.     By its conduct BHN materially breached the P&S Agreement, and subsequently failed to cure such breach resulting in a default.

30.     As a result of BHN's breach of the P&S Agreement, Plaintiff has suffered monetary damages, which it is entitled to recover.

31.     Pursuant to the terms of the P&S Agreement, Plaintiff is entitled to receive and retain the Escrowed Funds (the Earnest Money is liquidated damages and the Extension Fees are non-refundable) as a result of BHN's default and is further entitled to recover its costs and attorney's fees incurred in this action.

## COUNT II: BREACH OF THE IMPLIED COVENANT OF GOOD FAITH AND FAIR DEALING AGAINST BHN

32.     Plaintiff re-alleges and incorporates each of the allegations of this Complaint as if fully set forth herein.

33.     Plaintiff and BHN entered into the P&S Agreement, a binding contract.

34.     The P&S Agreement contained an implied covenant of good faith and fair dealing.

35.     By its conduct BHN breached the P&S Agreement's implied covenant of good faith and fair dealing.

36.     As a result of BHN's breach of the P&S Agreement's implied covenant of good faith and fair dealing, Plaintiff has suffered monetary damages, which it is entitled to recover.

### COUNT III: EQUITABLE RELIEF AGAINST FATIC

37.     Plaintiff re-alleges and incorporates each of the allegations of this Complaint as if fully set forth herein.

38.     Plaintiff, BHN, and FATIC entered into the Escrow Agreement, a binding contract.

39.     Pursuant to the Escrow Agreement, following BHN's default on the P&S Agreement, Plaintiff requested that FATIC release the Escrowed

40.      Funds to Plaintiff.

41.     FATIC has not yet released the Escrowed Funds to Plaintiff nor has it notified Plaintiff that such release will be forthcoming.

42.     Plaintiff is entitled to an order from this Court, directing FATIC to release to the Escrowed Funds to Plaintiff or, in the alternative, an order directing FATIC to deposit the funds in the registry of the Court to abide the outcome of this case.

WHEREFORE, Plaintiff respectfully requests that this Court:

A.      Enter judgment in favor of Plaintiff on all counts in the amount of $450,000.00, plus costs, attorney's fees and interest;

B.      Order FATIC to release the Escrowed Funds to Plaintiff; or

C.      In the alternative, order FATIC to deposit the Escrowed Funds to this Court; and

D.      Issue such other further relief in Plaintiff's favor as the Court deems meet and just.

Respectfully submitted,

STAG WILLIAMSPORT, LLC
By its attorneys,

Date: September 30, 2021

/s/ Benjamin M. Greene
Benjamin M. Greene, BBO# 696850
Arent Fox LLP

I HEREBY ATTEST AND CERTIFY ON
Dec. 21, 2021
_____ . THAT THE
FOREGOING DOCUMENT IS A FULL,
TRUE AND CORRECT COPY OF THE
ORIGINAL ON FILE IN MY OFFICE,
AND IN MY LEGAL CUSTODY.

MICHAEL JOSEPH DONOVAN
CLERK / MAGISTRATE
SUFFOLK SUPERIOR CIVIL COURT
DEPARTMENT OF THE TRIAL COURT
BY:
Deputy Assistant Clerk

7

Prudential Tower
800 Boylston Street
Boston, MA 02199-8004
 (617) 973-6100
Benjamin.Greene@arentfox.com

## <u>VERIFICATION</u>

I, Alan H. Simmons, as Assistant Secretary of STAG Williamsport, LLC, state that I have reviewed the foregoing allegations of this Verified Complaint and the allegations are true to the best of my knowledge, information, and belief.

This 29 day of September, 2021

STAG Williamsport, LLC

By: _____
Name:  Alan H. Simmons
Title:  Assistant Secretary

# Exhibit

# 1

## PURCHASE AND SALE AGREEMENT

This Purchase and Sale Agreement ("Agreement") is entered into as of the 7th day of June 2021 (the "Effective Date"), by and between STAG Williamsport, LLC, a Delaware limited liability company ("Seller") and BHN Associates, LLC, a New York limited liability company ("Buyer").

## R E C I T A L S

Seller is the fee owner of that certain Property (as defined below) improved with an office/warehouse building ("Building") situated on approximately 22.096 acres of land ("Land") located at 3300 Wahoo Drive, Williamsport, PA all as more particularly described in Exhibit A attached hereto and incorporated herein.

Buyer desires to acquire the Property and Seller is willing to sell the Property, on the terms and conditions set forth herein.

**ACCORDINGLY,** in consideration of the incorporation of the above recitals and the mutual covenants contained herein, the receipt and sufficiency of which are hereby acknowledged, the parties agree as follows:

1.      DEFINITIONS.  The following terms used herein shall have the following meanings:

1.1      Broker:  Lee & Associates of Easter Pennsylvania

1.2      Business Day:  Any day on which national banks are open for business in the Commonwealth of Pennsylvania.

1.3      Intentionally Omitted.

1.4      Closing:  The conveyance, transfer and assignment of the Property by Seller to Buyer, in accordance with the provisions set forth in this Agreement.

1.5      Closing Date:  The Closing shall occur on the date that is on or about fifteen (15) days following the conclusion of the Study Period or if applicable, the first Business Day thereafter, unless otherwise agreed upon in writing by Seller and Buyer.  It is understood and agreed that all documents required to be delivered under Sections 6.3 and 6.6, and the wire transfer of Buyer's and/or Buyer's lender's funds shall be delivered into escrow by 4:00 PM (EST) on the Closing Date.  Buyer shall have the right to extend the Closing Date by two (2) additional fifteen (15) day periods conditioned upon Seller's receipt of Buyer's written notice (which may be by e-mail) to extend no later than two (2) Business Days prior to the Closing Date together with by a wire transfer payment to Escrow Agent of an extension fee ("Extension Fee") of Seventy-Five Thousand and 00/100 ($75,000.00) per extension period.  The Extension Fee shall be non-refundable to Buyer, except as otherwise provided under this Agreement, and will be applied to the Purchase Price at Closing.

1.6      Deed:  The recordable Special Warranty Deed conveying to Buyer fee simple title to the Building and Land, subject only to the Permitted Exceptions.

1

1.7     Earnest Money:  The amount of provided in Section 2.2.

1.8     Earnest Money Escrow Agreement:  The strict joint order escrow trust instructions among Escrow Agent, Buyer and Seller governing the deposit and disbursement of the Earnest Money attached hereto and incorporated herein as Schedule 1.

1.9     Escrow Agent:  The Title Insurer who shall hold the Earnest Money and act as escrow agent pursuant to the terms of Earnest Money Escrow Agreement.

1.10    Estoppel Certificate.  Seller shall use commercially reasonable efforts to obtain Tenant's execution of an Estoppel Certificate in the form attached hereto as Exhibit B (with such modifications as may be reasonably requested by the Tenant), at least five (5) days prior to the Closing Date. In no event shall Seller's inability to obtain an executed Estoppel Certificate constitute default by Seller hereunder, provided that delivery of an Estoppel Certificate from Tenant shall be a condition to Buyer's obligation to purchase the Property as provided in Section 6.7(a)(5) below.

1.11    Improvements:  The Building and all other structures or improvements located on the Land.

1.12    Intangible Property:  All intangible property held by Seller or in which Seller has an interest, in connection with the Property, including, without limitation, all those permits, licenses, certificates, approvals, authorizations, variances and consents (including any and all presently pending applications therefor) affecting the land and the Building and Improvements thereon issued to Seller or to its predecessors in interest in the Property as holder, claimant, licensee, permitee, successor in interest, applicant and/or owner or lessor of the Property, by any and all federal, state, county, municipal and local governments, and all departments, commissions, boards, bureaus and offices thereof, having or claiming jurisdiction over the Property, whether or not the same may presently be in full force and effect, (ii) water rights and permits pertaining to the Property, including, but not limited to,  storage and use rights appurtenant and/or pertaining to the Property; and (iii) all other intangible property held by Seller in connection with the Property, including all zoning rights, licenses, permits, contract rights, utility contracts, and guaranties and warranties in effect with respect to the Property.

1.13    Knowledge of Buyer:  The terms "Knowledge of Buyer", to Buyer's Knowledge and similar phrases mean any fact or circumstance which is within the actual knowledge of Samuel Blum and in no event shall any such term extend to the knowledge of any other employee, member, manager or agent of Buyer.

1.14    Knowledge of Seller:  The terms "Knowledge of Seller", to Seller's knowledge and similar phrases mean any fact or circumstance which is within the actual knowledge of David G. King, Executive Vice President of Seller and Director of Real Estate Operations or readily available to him upon reasonable inquiry and in no event shall any such term extend to the knowledge of any other employee, member, manager or agent of Seller.

1.15    Land:  The real estate described in Exhibit A attached hereto underlying the Building, including all right, title and interest in and to any land lying in the bed of any existing or proposed highway, street, road, avenue, or alley abutting or adjoining the real property, any air

2

rights related thereto, the rights and easements appurtenant to the ownership of such real property, all right, title and interest of the Seller in and to any strips or gores of land adjoining said real property, and all other rights appurtenant to such real estate.

1.16     Lease:  The Lease between Moran Industries, Inc. and Tenant dated July 22,2011, pursuant to which Tenant has the right to occupy the Improvements as affected by that certain Sublease ("Sublease") between Tenant and Subtenant dated as of April 10, 2019 (the Lease and Sublease are collective referred to as the Lease.

1.17     Permitted Exceptions:  As defined in Section 3.

1.18     Personal Property: All equipment, machinery, apparatus, appliances, supplies, and other articles of personal property located on and used in connection with the operation of the Improvements, to the extent any of same are owned by Seller.

1.19     Property:  Collectively, the Land, Improvements, and Intangible Property.

1.20     Purchase Price:     Thirteen Million Five Hundred Thousand and 00/100 Dollars ($13,500,000.00) subject to adjustments as set forth herein, to be paid by Buyer at Closing by wire transfer of immediately available federal funds.

1.21     SNDA. Buyer shall have the right to deliver to Seller a form of subordination, attornment and non-disturbance agreement (the "SNDA") which is reasonably satisfactory to Buyer's lender.  As a condition precedent to Buyer closing under this Agreement, an SNDA for the Tenant must be delivered to Buyer no later than ten (10) business days prior to the Closing.

1.22     Study Period.  A period commencing on the first (1st) Business Day following the Effective Date and continuing for thirty (30) days (or if applicable, the first business day thereafter).

1.23     Intentionally Omitted.

1.24     Surviving Obligations:  Those obligations of Buyer or Seller specifically described or referred to herein as a Surviving Obligation or Surviving Obligations, as applicable, which shall survive Closing or termination of this Agreement.

1.25     Tenant.  FTS International Services, LLC in its capacity as tenant

1.26     Subtenant:  Shop Vac Corporation, in its capacity as subtenant

Title Insurer:  The Boston office of First American Title Insurance Company, 800 Boylston Street, Suite 2820, Boston, MA 02199, Attention: Anthony J. Bucchere, Esq.


2.     TERMS OF PURCHASE.

2.1     Purchase and Sale.  Buyer shall purchase the Property from Seller and Seller shall sell the Property to Buyer for the Purchase Price and on the terms and subject to the conditions hereinafter set forth.

3

2.2     Earnest Money.

(a)     Within two (2) business days of the Effective Date, Buyer shall deposit the amount of Two Hundred Thousand and 00/100 Dollars ($200,000.00) (the "Initial Deposit") with the Escrow Agent by wire transfer. Within two (2) Business Days of the expiration of the Study Period, Buyer shall deposit the amount of One Hundred Thousand and 00/100 ($100,000.00) (the "Second Deposit", which together with the Initial Deposit shall be the "Deposit" or the "Earnest Money") and which shall not be refundable except as otherwise provided under this Agreement and shall be applied to the Purchase Price. The Deposit will be refunded the Agreement terminates pursuant to Section 4.3 below.  The Earnest Money shall be applied in payment of the Purchase Price at Closing, or, as provided in Section 12.2, disbursed to Seller in the event of a Buyer default as Seller's sole and exclusive remedy or disbursed to Buyer as provided in Section 12.1 or as otherwise provided in this Agreement. The terms of the Earnest Money Escrow Agreement shall be consistent with the provisions of this Agreement, but if there shall be any conflict, the terms of this Agreement shall control.  The Earnest Money shall be invested (at Buyer's expense) and the interest earned thereon shall be disbursed to Buyer.

2.3     Payment of Purchase Price.  On the Closing Date, the Earnest Money shall be paid to the Seller as a part of the Purchase Price and Buyer shall pay the balance of the Purchase Price, as adjusted for prorations and other matters provided for herein, by wire transfer of funds to Escrow Agent.

3.     TITLE COMMITMENT AND SURVEY.

3.1     Title.  Within one (1) Business Day following confirmation of receipt of the Earnest Money by the Escrow Agent, Seller shall deliver to Buyer a copy of Seller's Owner's Title Insurance Policy No. 16-540-971, dated June 6, 2013 (the "Existing Policy").  Promptly after the Effective Date, Seller shall obtain a commitment, together with copies of all available recorded instruments noted therein (the "Title Commitment") from Title Insurer for an ALTA Form 2006 Owner's Title Insurance Policy (the "Policy") covering title to the Property.  At Closing, the Policy will be issued based on the Title Commitment subject only to (i) real estate taxes not yet due and payable; (ii) rights of tenants in possession under the Lease; and (iii) such other matters approved or deemed approved by Buyer (collectively, the "Permitted Exceptions").  Any title exceptions pertaining to liens or encumbrances of a definite or ascertainable amount, caused or permitted by Seller, shall be removed by the payment of money at Closing.

3.2     Survey.  Within one (1) Business Day following confirmation of receipt of the Earnest Money by the Escrow Agent, Seller shall deliver to Buyer a copy of the ALTA/ACSM Land Title Survey, prepared by Mid-Penn Engineering Corporation and dated May 14, 2013 (the "Existing Survey").  Buyer may obtain at its expense any update or re-certification of the Existing Survey or a new survey as it may desire (the "Survey").

3.3     Exceptions. Buyer shall notify Seller in writing (which may be by e-mail), on or prior to the later of (x) ten (10) days prior to the expiration of the Study Period, and (y) seven (7) Business Days after the receipt by the Buyer of the Title Commitment, of any matter shown on the

4

Title Commitment (other than the Permitted Exceptions detailed in <u>Section 3.1</u> above) which is not acceptable to Buyer (each a "<u>Title Defect</u>") (such notice referred to herein as "<u>Buyer's Title Defect Notice</u>"). Within five (5) Business Days of Seller's receipt of Buyer's Title Defect Notice, Seller shall respond to Buyer in writing indicating what, if any action, Seller shall take with respect to any Title Defect ("<u>Seller's Title Defect Response</u>"), and to the extent Seller has elected to cure any Title Defect, Seller shall have until the Closing Date to have such matters removed from the Title Commitment or to correct such Title Defects and cause the Title Commitment to be revised and reissued without such items or to have the Title Insurer commit to insure against loss or damage that may be occasioned by such matters or Title Defects. Within five (5) Business Days of Buyer's receipt of Seller's Title Defect Response, Buyer shall notify Seller whether the corrective action for any Title Defect as described in Seller's Title Defect Response is not satisfactory. If Buyer objects to Seller's proposed corrective action, then Buyer shall so state in its notification to Seller (which may be by e-mail) and Buyer shall elect to either (i) terminate this Agreement (and the Earnest Money shall promptly be returned to Buyer), or (ii) accept Seller's proposed corrective action and waive all rights to further object to such Title Defects subject to Seller completing the stated corrective action, and all other Title Defects as set forth in Buyer's Title Defect Notice shall be deemed Permitted Exceptions. To the extent Seller has elected to address any Title Defects, in the event Seller fails to have such matters removed or corrected, or in the alternative, to obtain the revised Title Commitment specified above within the specified time, then Buyer may, upon notice to Seller either (i) terminate this Agreement (and the Earnest Money shall be returned to Buyer) or (ii) accept title (and/or any matters shown on the Survey) as it then is with the right to deduct from the Purchase Price liens or encumbrances reflected on the Title Commitment of a definite or ascertainable amount caused or permitted by Seller. Notwithstanding anything to the contrary contained elsewhere in this Agreement, Seller shall be obligated to remove from the Title Commitment (i) any security deed, mortgage, assignment of rents and leases and/or UCC financing statements encumbering the Property, or monetary liens, monetary encumbrances, security interests, judgments, mechanic's or materialmen's liens, tax liens or other voluntary or involuntary liens consented to by Seller or arising from any act or omission of Seller which encumbers any part of the Property, and all of which Seller shall cause to be repaid in full or discharged at Closing, (ii) encumbrances that have been voluntarily placed against the Property by Seller after the Effective Date without Buyer's prior written consent and that will not otherwise be satisfied on or before the Closing, or (iii) exceptions that can be removed from the Title Commitment by Seller's delivery of a customary owner's title affidavit or gap indemnity (all of the foregoing hereinafter collectively referred to as the "<u>Seller's Required Removal Items</u>").

4.    <u>DUE DILIGENCE</u>.

      4.1    <u>Delivery of Documents</u>. Within one (1) Business Day following confirmation of receipt of the Earnest Money by the Escrow Agent, Seller shall deliver to Buyer for its review, copies of the following documents (collectively, with the Existing Policy and Existing Survey, the "<u>Documents</u>") which are in Seller's possession:

            (a)    Copies of all leases, together with any amendments thereto;

            (b)    Copies of the most recently issued bills for all real property taxes;

(c)  Any plans, drawings, and specifications of the buildings and improvements; any permits and approvals; any service contracts; any warranties relating to the improvements; certificates of insurance; and copies of Certificates of Occupancy; and

(d)  Copies of 2018, 2019 and year-to-date financial statements for the Property; and

(e)  Copies of existing Survey of the property and Seller's title insurance policy; and

(f)  Insurance loss run reports from 2019 through present.

In addition, Seller shall deliver promptly to Buyer for Buyer's review, any materials relating to, updating or modifying any of the Documents that are within Seller's possession at any time prior to Closing.

4.2.  <u>Study Period</u>.  During the Study Period,  Buyer and its agents, employees or contractors shall have the right, at Buyer's sole cost, to review the Documents, to inspect the Property and to conduct such tests and analyses of the physical, structural, financial, and environmental conditions of the Property and the feasibility of the acquisition and operation of the Property and to obtain such commitments or agreements relating to any acquisition financing as Buyer deems appropriate in accordance with the provisions hereof. Seller shall reasonably cooperate with Buyer as necessary in these endeavors.  Buyer shall coordinate its inspections and entry on the Property with Broker and Seller so that Broker and/or another representative of Seller may be present at such times and where feasible, provide Seller and Broker at least 48 hours oral notice of Buyer's plans.  Buyer shall not conduct any invasive testing on any portion of the Property or any Building without first providing Seller with a proposed scope of such work and obtaining the Seller's consent, which consent shall not be unreasonably withheld, delayed or conditioned. In the event that Buyer's Phase I environmental report recommends that Buyer obtain additional environmental reports or otherwise recommends any additional environmental testing, then Buyer shall notify Seller of the recommendation and provide Seller with a copy of the Phase I environmental report and/or the applicable recommendation and a proposed scope of work, which approval shall not be unreasonably withheld, delayed or conditioned. The scope of the work performed in connection with such additional environmental testing shall be subject to Seller's review and written approval.  Buyer shall indemnify and hold Seller harmless from and against any damages, claims or reasonable third-party out-of-pocket losses (including reasonable attorneys' fees) for injury to person or damage to property to the extent directly arising from Buyer's (or its agents or contractors) entry onto the Property, and shall repair any damage to any property to substantially its prior condition caused by Buyer's tests or entry on the Property, which indemnification and repair obligations shall be Surviving Obligations. Prior to any third-party consultant entering onto any portion of the Property in conjunction with Buyer inspections during the Study Period, such person or entity shall deliver to Seller a certificate of insurance evidencing commercial general liability coverage in an amount not less than $1.0 million.

4.3  <u>Termination Election</u>.  Prior to the expiration of the Study Period, Buyer shall have the right, in its sole and absolute discretion, for any reason or no reason, to notify Seller (which notice may be sent solely via e-mail): (i) that Buyer has determined to proceed with the acquisition of the

Property, and in the event of such notice, the contingency provided for in this Section 4 no longer shall be applicable, and this Agreement shall continue in full force and effect, or (ii) of Buyer's termination of this Agreement, for any reason or for no reason in its sole and absolute discretion, in which event the Earnest Money shall be promptly returned to Buyer by the Escrow Agent (which return of the Earnest Money shall not be conditioned in any way on the consent of the Seller) and, except as expressly set forth herein, neither party shall have any further liability or obligation to the other hereunder. If Buyer fails to give either of such notices prior to the expiration of the Study Period this Agreement shall be deemed to be automatically terminated, in which event the Earnest Money shall be promptly returned to Buyer by the Escrow Agent (which return of the Earnest Money shall not be conditioned in any way on the consent of the Seller) and, except as expressly set forth herein, neither party shall have any further liability or obligation to the other hereunder.

4.4     Following the expiration of the Study Period, the Earnest Money shall be non-refundable to Buyer except in the event of Seller's default or as otherwise specifically provided herein.

5.     CONDEMNATION/CASUALTY

5.1     Taking. If prior to the Closing Date, a significant portion of the Land is taken by eminent domain or is under notice of an eminent domain proceeding such that the Property would not be usable for its current use (a "Taking"), Seller shall immediately notify Buyer in writing. If a Taking is reasonably estimated by Seller to require expenditure of more than Three Hundred Thousand Dollars ($300,000.00) to restore the Property or reconfigure portions of the Land, is of such character as would entitle the Tenant to terminate its Lease on account of such Taking or materially adversely affects access to the Property or the number of parking spaces, Buyer may elect either to terminate this Agreement or to proceed to Closing by written notice to Seller within five (5) days following receipt of Seller's notice. If Buyer elects to terminate this Agreement, the Earnest Money shall be returned to Buyer. If Buyer elects to proceed to Closing, then at Closing Seller shall assign to Buyer all Seller's rights to any proceeds or award for such taking. Seller agrees not to negotiate, compromise or agree to any settlement of any award or damages arising out any condemnation of the Property without Buyer's consent, which consent shall not be unreasonably withheld or delayed.

5.2     Casualty. Risk of loss to the Property shall be borne by Seller until the Closing. If prior to the Closing Date any portion of the Property shall be damaged or destroyed by fire or other casualty that is not a Material Event (as defined below), neither party shall have the right to cancel this Agreement and Buyer shall purchase the Property in accordance with this Agreement, and the Purchase Price shall not be reduced; *provided, however*, that Buyer shall receive all the insurance proceeds from any insurance policies insuring the Property, or an assignment of such proceeds, together with a credit equal to any insurance deductibles. If a casualty that is a Material Event shall have occurred at the Property, Buyer shall have the right to: (i) cancel and terminate the Agreement as to the entire Property, whereupon the Earnest Money and any interest earned thereon shall be immediately returned to Buyer, and except for those obligations that expressly survive the termination of this Agreement, neither Seller nor Buyer shall be further obligated to the other hereunder; or (ii) elect to proceed to Closing and receive all the proceeds from any insurance policies insuring the Property, or an assignment of such proceeds, together with a credit equal to any insurance deductibles. For the purpose of this Section 5.2, a Material Event shall have

occurred if (i) the extent of any damage is five (5%) percent or more of (x) the rentable square feet of the Property or (y) of the parking spaces or (ii) it will reasonably be expected to cost more than five (5%) percent of the Purchase Price to restore the Property, as reasonably estimated by a licensed architect or contractor reasonably acceptable to Seller and Buyer, or (iii) it would entitle the Tenant to terminate its Lease or abate its rent in whole or in part for any period beyond that covered by Seller's rent loss insurance applicable to such casualty or condemnation, or (iv) it is not covered by Seller's insurance or if such insurance is not for full replacement cost, or (v) it materially affects the access to or use of the Property or the parking lot relating thereto.  If the Buyer decides to proceed to a Closing after a casualty event, Seller shall not designate an insurance adjuster or agree to any adjustment or settlement with the insurance company without the prior written consent of Buyer.

6.    CLOSING.

    6.1    Time of Closing.  The Closing shall occur at the offices of the Title Insurer, on the Closing Date.  It is understood and agreed that the Closing shall be transacted via customary escrow provisions and that the physical presence of the parties is not required at Closing; and that all documents required to be delivered under Section 6.3 and Section 6.6, and the wire transfer of Buyer's and/or Buyer's lender's funds shall be delivered into escrow by 3:00 PM Eastern Daylight-Saving Time on the Closing Date.

    6.2    Possession.  Seller shall deliver to Buyer possession of the Property at the time of Closing subject only to whatever rights of possession Tenant may then have.

    6.3    Seller Deliveries.  On the Closing Date, Seller shall execute and deliver the following documents to the Title Insurer for the benefit of Buyer, each of which shall be in a form reasonably acceptable to Buyer:

        (a)    The Deed.

        (b)    An Assignment and Assumption of Lease Agreement.

        (c)    Notice advising Tenant of the sale of the Property and Assignment of the Lease and the Security Deposit under the Lease.

        (d)    General assignment of all right, title and interest of Seller in and to the Intangible Property.

        (e)    Bill of Sale with respect to any personal property, fixtures or equipment owned by Seller located on the Property, other than those belonging to Tenant.

        (f)    A Certificate under Section 1445 of the Internal Revenue Code and the Treasury Regulations promulgated thereunder, confirming the Transferor's non-foreign status.

        (g)    Signature Page to the agreed upon form of Settlement Statement.

        (h)    Transfer tax declarations, if any.

     (i)    Such other documents, affidavits, instruments, certifications and confirmations which Seller is required to deliver to Buyer pursuant to this Agreement or as may be otherwise required by the Title Insurer in order to consummate this transaction including the customary form of Owner's Title Insurance Affidavit and Gap Indemnity.

     (j)    To the extent in the possession of Seller, all keys, key cards, and access codes to any portion of the Property.

     (k)    A sworn written statement made by the Seller dated as of the Closing Date, that the representations and warranties set forth in this Agreement are true, correct, complete and accurate as of the Closing Date.

     (l)    If applicable, evidence that any existing management agreement or leasing agreement entered into by Seller with respect to the Property has been terminated.

     (m)    An original executed Tenant Estoppel Certificate to the extent not previously delivered to the Buyer.

     (n)    An original or certified copy of the Lease.

     (o)    To the extent they are then in Seller's possession, certificates, licenses, permits, authorizations and approvals issued for or with respect to the Property by governmental and quasi-governmental authorities having jurisdiction over the Property.

6.4    <u>Manner of Closing</u>.  On the Closing Date, the transaction shall be closed by means of a so-called New York Style Closing, with the concurrent delivery of the documents listed in <u>Sections 6.3</u> and <u>6.6</u> and the payment of the Purchase Price. Seller and Buyer agree that disbursement of the Purchase Price, as adjusted by the prorations, shall not be conditioned upon the recording of the Deed.

6.5    <u>Closing Costs</u>.  Seller shall pay the following costs: (a) one-half of the cost of documentary stamps or transfer taxes payable on recording of the deed; (b) the cost of a "base" owner's title insurance policy; and (c) one-half of the examination fee and closing fees charged by the Escrow Agent.  Buyer shall pay the following costs: (v) one-half of the cost of documentary stamps or transfer taxes payable on recording of the deed; (w) one-half of the examination fee and closing fees charged by the Escrow Agent; (x) the cost of all recording fees including the Deed; (y) the cost of any survey that Buyer may obtain as a part of its due diligence; and (z) the cost of extended coverage or requested endorsements to the owner's title insurance policy and any mortgagee's policies of title insurance.  Each party shall assume, bear and pay its own attorney's fees.

6.6    <u>Buyer Deliveries</u>.  On the Closing Date, Buyer shall execute and deliver the following documents to the Title Insurer for the benefit of Seller:

     (a)    Signature Page to the agreed upon form of Settlement Statement;

(b)    Counterpart signature page to the Assignment and Assumption of Lease Agreement;

(c)    Transfer tax declarations, if any;

(d)    Such other documents, instruments, certifications and confirmations which Buyer is specifically required to deliver to Seller pursuant to this Agreement or as may be otherwise reasonably required by Title Insurer in order to consummate this transaction.

6.7    Conditions to Closing.

(a)    The Closing Conditions described in subsections (1) through (11) shall be conditions to Buyer's obligations to consummate the acquisition of the Property (the "Buyer's Closing Conditions").

(1)    There shall be no matters other than the Permitted Exceptions disclosed by any update to the Title Commitment as of the Closing Date which are not cured by Seller;

(2)    Seller shall have delivered all of the items referred to in Section 6.3;

(3)    Seller's representations and warranties shall be true and correct in all material respects on the Closing Date;

(4)    Seller shall not be the subject of any bankruptcy or other insolvency proceeding or action;

(5)    Buyer shall have received an Estoppel Certificate executed by the Tenant and subtenant in form reasonably acceptable to Buyer or as otherwise provided herein;

(6)    Buyer shall have received an SNDA executed by the Tenant in a form reasonably acceptable to the Lender; and

(7)    if applicable, Buyer shall have received evidence, reasonably satisfactory to Buyer, that any option, right of first refusal or similar preferential right to purchase any portion of the Property has, by its terms, lapsed or has been expressly waived by the relevant party or parties.

(b)    The Closing Conditions described in subsection (1) through (3) shall be conditions to Seller's obligations to consummate the sale of the Property;

(1)    Buyer shall have delivered all of the items referred to in Section 6.6;

(2)    Buyer's representations and warranties shall be true and correct in all material respects on the Closing Date; and

(3)    Buyer shall not be the subject of any bankruptcy or other reorganization or insolvency proceeding.

(c)    In the event any of the Buyer Closing Conditions shall not be satisfied as of the Closing Date, Seller may, at Seller's option, adjourn the Closing Date on a one-time basis for a period not exceeding thirty (30) days to allow Seller additional time to satisfy the Buyer's Closing Conditions.  Notwithstanding the foregoing, if Seller does not elect to adjourn the Closing Date as provided above, Buyer shall have the right to either (i) terminate this Agreement by written notice to Seller on or before the Closing Date, in which event the Earnest Money  shall be promptly returned to Buyer and neither party shall have any further rights against the other except for obligations which expressly survive the termination of this Contract, or (ii) on a one-time basis, adjourn the Closing Date for a period not exceeding thirty (30) days to allow Seller additional time to satisfy such Buyer's Closing Conditions, or (iii) close on the purchase of the Property without any abatement or reduction of the Purchase Price or other liability on the part of Seller.

7.    <u>PRORATIONS AND ADJUSTMENTS.</u>

7.1    <u>Real Estate Taxes</u>.  The adjustment for real estate taxes and assessments allocable to the payment period that includes the Closing Date ("Taxes") shall be based upon the number days in the calendar year in which the Closing occurs, namely, on a per diem basis, and based upon the actual amount of real estate taxes, if known at the time of Closing. If the real estate taxes are undetermined for the year of closing, the proration shall be based upon the most recent available tax rate and valuation, giving effect to applicable exemption, recently voted millage, etc., whether or not certified. Seller shall pay at Closing all delinquent Taxes, if any, together with any fines or penalties relating thereto.  The prorations for taxes and assessments which are made at Closing shall be subject to re-proration for a period of twelve (12) months after Closing based on the new fixed tax rate.

7.1.1    <u>Method of Tax Proration</u>.  The Buyer will assume, and agrees to pay and indemnify Seller against any liability for any and all Taxes that are due and payable from and after the Closing Date, regardless of when or for what period of time any such Taxes may have accrued. At the Closing, however, the Buyer will be entitled to a credit from the Seller for a portion of the Taxes that are due and payable in the year of Closing (the "Closing Year"), based upon the number of days in the Closing Year that the Seller owned the Property, so that the Taxes that are due and payable in the Closing Year will be prorated on a "accrual basis", except in the event Seller has paid any portion of the Taxes due and payable from and after the Closing Date. In such event, Seller shall then receive a credit from Buyer for a portion of the Taxes paid by the Seller in the year of Closing.

7.2    <u>Rent</u>. Rent for the month of Closing shall be prorated as of the date of the Closing Date.   If there is any rent owed for any period prior to the month of Closing, Buyer shall make commercially reasonable efforts to collect such amounts for the benefit of Seller, and upon receipt shall deliver such funds to Seller, provided that amounts received by Buyer in payment of rent may be first applied to current obligations, and provided further that Buyer shall not be obligated to expend any amounts in such collection efforts nor be obligated to declare a default under the Lease or sue the Tenant to collect such delinquent amounts. Buyer will receive a credit for all prepaid

11

rents, if any, paid by the Tenant. Seller may not commence a legal action to recover pre-closing arrearages from the Tenant after the Closing Date.

      7.3     Seller shall utilize its best efforts to obtain a final actual reading of all water and sewer meters as of the Closing Date; *provided, however*, that if any such charges are payable by the Tenant under the Lease, such charges shall not be apportioned.

      7.4     If applicable, Seller shall utilize its best efforts to obtain a final actual meter reading for all utilities, fuel, gas, and electric charges; *provided, however*, that if any such charges are payable by the Tenant under the Lease, such charges shall not be apportioned.

      7.5     If Seller, as landlord under the Leases, is currently collecting from the Tenant under the Lease additional rent to cover taxes, insurance, utilities (to the extent not paid directly by Tenant), common area maintenance and other operating costs and expenses (collectively, "Operating Costs") in connection with the ownership, operation, maintenance and management of the Property, Buyer shall receive a credit at Closing in an amount equal to the amount of such Operating Costs then being held by Seller.

      7.6     The aggregate of all tenant security deposits as of the Closing Date which Seller is obligated to pay to the Tenant, if any, shall be paid or credited to Buyer at Closing.

      7.7     General. All prorations shall be affected by an adjustment to the Purchase Price payable at Closing. The parties agree to correct promptly any computational errors with respect to any proration items or closing adjustments, discovered within six (6) months following Closing, which obligation shall be a Surviving Obligation.

8.     SELLER'S REPRESENTATIONS. To induce Buyer to enter into this Agreement and to consummate the transactions contemplated hereby, Seller makes the following representations and warranties as of the Effective Date and the Closing Date:

      8.1     Existence. Seller is duly organized, validly existing and in good standing under the laws of its jurisdiction of formation. Seller has the necessary limited liability company power and authority to execute, deliver and perform its obligations under this Agreement and document or instrument delivered in accordance herewith and to consummate the transactions contemplated hereby and thereby. Seller has all necessary limited liability company power and authority required to own and operate the Property as currently conducted.

      8.2     Authority/Enforceability. The persons executing any instruments on behalf of Seller are fully authorized and have the power to so act. The Agreement is valid and enforceable against Seller in accordance with its terms and each instrument to be executed by Seller pursuant hereto or in connection therewith will, when executed, be valid and enforceable against Seller in accordance with it terms, subject to general principles of bankruptcy and equity.

      8.3     No Violation. The execution, delivery, and performance of this Agreement by Seller and the consummation of the transactions contemplated hereby will not (a) violate any judgment, order of decree of any court applicable to Seller; or (b) constitute a default pursuant to any material agreement to which Seller is a party or is bound or (c) violate any of its organizational documents.

8.4    Consent.  No consents are required on behalf of Seller from any party necessary to the execution, delivery, and performance of this Agreement by Seller and the consummation of the transactions contemplated hereby that have not been obtained.

8.5    Litigation.  There is no suit or proceeding pending or, to the knowledge of Seller, threatened in writing, against Seller or the Property, in any court or other governmental instrumentality, which would affect Seller's ability to transfer title to Property or use of Property.

8.6    No Options.  Seller has not entered into any sale or other contract which is in effect with respect to the transfer of all or any portion of the Property.  Other than the Tenant's right of first refusal as set forth in Section 16.6 of the Lease, which right has been expressly waived by Tenant in writing, Seller has not granted an option, right of first refusal or other rights to acquire all or any portion of the Property to any other person.  Other than Tenant under the Lease and the Subtenant under the Sublease, to the knowledge of Seller, there are no persons in occupancy of, or have any rights to occupy, any portion of the Property.

8.7    Condemnation.  Seller has received no written notice and has no Knowledge of any pending or threatened condemnation proceedings or other proceeding in the nature of eminent domain with respect to the Property.

8.8    OFAC.  Neither Seller nor, to Seller's Knowledge, any direct or indirect owner of Seller is (a) identified on the OFAC List (as hereinafter defined) or (b) a person with whom a citizen of the United States is prohibited to engage in transactions by any trade embargo, economic sanction, or other prohibition of United States law, rule, regulation or Executive Order of the President of the United States.  The term "OFAC List" shall mean the list of specially designated nationals and blocked persons subject to financial sanctions that is maintained by the U.S. Treasury Department, Office of Foreign Assets Control and any other similar list maintained by the U.S. Treasury Department, Office of Foreign Assets Control pursuant to any law, rule, regulation or Executive Order of the President of the United States, including, without limitation, trade embargo, economic sanctions, or other prohibitions imposed by Executive Order of the President of the United States.

8.9    Third Party Contracts.  Seller has not entered into any agreements relating to the Property that are or will be binding on Buyer or the Property following the Closing Date.

8.10.  A true, correct and complete copy of the Lease has been made available to Buyer for Buyer's review. Except as otherwise disclosed to Buyer: (i) there are no leases, licenses or other occupancy agreements to which Seller or the Property is bound affecting any portion of the Property as of the date hereof; (ii) the Lease is in full force and effect; (iii) to Seller's knowledge, no default exists on the part of the Tenant under the Lease; (iv) Seller has not received written notice of, nor does Seller have actual knowledge of, any default or breach on the part of Seller, as landlord, under the Lease; (v) the Tenant has not paid any rent, fees, or other charges for more than one (1) month in advance (other than with respect to security deposits, operating expenses, and/or tax escrows thereunder); (vi) no unpaid brokerage commissions, tenant improvement allowances or other payments owed to the Tenant or compensation of any kind are due in connection with the Lease; and (viii) Tenant has waived its right of first refusal as set forth in the Lease and has no other option or right to purchase any portion of the Property.

8.11. Seller has not received written notice of any assessments against and, to the best of the knowledge of Seller, no assessments are threatened or proposed against the Property or any part thereof, which have not been paid in full.

8.12. Seller has not received from any governmental agency any written notice of any violation of laws relating to the Property (including, without limitation, any environmental law or The Americans With Disabilities Act) that has not been corrected. Seller has no actual knowledge of any uncured violations of federal, state or municipal laws, ordinances, orders, regulations or requirements affecting any portion of the Property. Seller shall give to Buyer prompt notice of the institution of any such matter or proceeding prior to the Closing, including, without limitation, any environmental or land use law, rule, ordinance or regulation applicable to the Property.

8.13. Seller has not (i) made a general assignment for the benefit of creditors, (ii) filed any voluntary petition in bankruptcy or suffered the filing of any involuntary petition by Seller's creditors, (iii) suffered the appointment of a receiver to take possession of all, or substantially all, of Seller's assets, (iv) suffered the attachment or other judicial seizure of all, or substantially all, of Seller's assets, (v) admitted in writing its inability to pay its debts as they come due, or (vi) made an offer of settlement, extension or composition to its creditors generally.

8.14. Seller has not agreed to transfer, nor has Seller transferred any development rights appurtenant to the Property, nor does Seller have any knowledge of the transfer or the agreement to transfer any development rights by any former owner of the Property.

8.15 Seller has received no written notice from any insurance company or board of fire underwriters requesting the performance of any work or alterations with respect to the Property that has not been performed or required an increase in insurance rates applicable to the Property as a result of work that has not been performed. Seller has received no written notice of default or cancellation under any insurance policies covering the Property.

8.16. There are no unrecorded mortgages or other liens or encumbrances against the Property.

8.17. Seller has no employees or employee benefit plans. There are no union contracts or agreements in effect and Seller has had no communications during its ownership form any labor unions or the State or Federal Labor Relations Board. Seller will not enter into any negotiations or execute any contract with a labor union between the Effective Date and the Closing Date.

8.18. All fixtures and Personal Property currently owned by Seller and included in this sale are now and at the closing of title will be owned by the Seller, free and clear of any conditional bills of sale, chattel mortgages, security agreements or financing statements or other security interests of any kind.

8.19   Survival.  It shall be a condition to Buyer's obligation to close that all of the representations, warranties and covenants of Seller contained in this Agreement are true and

14

correct as of the date hereof and the Closing Date in all material respects. Furthermore, the terms of this Section 8 shall survive the Closing for six (6) months unless another time period is expressly specified. At Closing, Seller shall deliver a certificate to Buyer disclosing any material changes to the foregoing representations or stating that there are no such material changes.

9.    AS IS/RELEASE.

9.1    As-Is Condition.  Subject to Seller's representations and warranties expressly set forth herein and acknowledging Buyer's opportunity to inspect the Property, Buyer agrees to purchase the Property "**AS IS**", "**WHERE IS**", with all faults and conditions thereon. Any written or oral information, reports, statements, documents or records concerning the Property, whether set forth in the Documents or otherwise ("Disclosures") prepared by parties other than Seller its agents or employees shall not be representations or warranties, unless specifically set forth in Sections 8.1 through 8.18. In purchasing the Property or taking other action hereunder, Buyer has not and shall not rely on any such Disclosures, but rather, Buyer shall rely only on Buyer's own inspection of the Property. Buyer acknowledges that the Purchase Price reflects and takes into account that the Property is being sold "as is."

9.2    No Additional Representations.  Buyer acknowledges and agrees that except as expressly set forth in this Agreement, Seller has not made, does not make and specifically disclaims any representations, warranties, promises, covenants, agreements or guaranties of any kind or character whatsoever, whether express or implied, oral or written, past, present or future, of, as to, concerning or with respect to the Property.

9.3    Buyer's Release of Seller.  Buyer represents to Seller that Buyer has conducted, or will conduct prior to Closing, such investigations of the Property as Buyer deems necessary or desirable to satisfy itself as to any matter relating to the Property, and will rely upon same and not upon any information provided by or on behalf of Seller, Seller's agents, employees or third parties representing or purporting to represent Seller with respect thereto except such representations as are specifically set forth herein. Upon Closing, Buyer shall assume the risk that adverse matters regarding the Property may not have been revealed by Buyer's investigations, and Buyer shall be deemed to waive and release Seller and Seller's affiliates from and against any and all claims, demands, causes of action, losses, damages, liabilities, reasonable third-party out-of-pocket costs and expenses (including reasonable attorneys' fees) of any and every kind or character, known or unknown, by reason of or arising out of the Property. Buyer acknowledges that the foregoing release includes claims of which Buyer is presently unaware and may be unanticipated and unsuspected.

9.4    Survival.  The provisions of this Section 9 shall survive the Closing. Buyer and Seller acknowledge and agree that the foregoing disclaimers, indemnifications and other agreements set forth herein are an integral part of this Agreement and the decision of each of Buyer and Seller to enter into this Agreement with regard to the sale and acquisition of the Property to Buyer for the Purchase Price.

10.    BUYER'S REPRESENTATIONS.  Buyer hereby represents and warrants for the benefit of Seller the following which, subject to the provisions of Section 12.3, shall be deemed remade on the Closing Date:

15

10.1     Existence. Buyer is duly organized, validly existing and in good standing under the laws of its jurisdiction of formation.  Buyer has the necessary power and authority to execute, deliver and perform its obligations under this Agreement and document or instrument delivered in accordance herewith and to consummate the transactions contemplated hereby and thereby.  Buyer has all necessary power and authority required to own and operate the Property as currently conducted.

10.2     Authority/Enforceability.  The person executing any instruments for or on behalf of the Buyer is fully authorized to act on behalf of Buyer and that the Agreement is valid and enforceable against Buyer in accordance with its terms and each instrument to be executed by Buyer pursuant hereto or in connection therewith will, when executed, be valid and enforceable against Buyer in accordance with it terms.

10.3     No Violation.  The execution, delivery, and performance of this Agreement by Buyer and the consummation of the transactions contemplated hereby will not (a) violate any judgment, order of decree of any court applicable to Buyer; or (b) constitute a default pursuant to any commitment, contract or agreement to which Buyer is a party or is bound; or (c) violate any of its organizational documents.

10.4     Consent. Buyer has obtained all consents necessary to the execution, delivery and performance of this Agreement by Buyer and consummation of the transactions contemplated herein.

10.5     Litigation.  There is no suit or proceeding pending or, to the Knowledge of Buyer, threatened in writing, in any court or other governmental instrumentality, which would affect Buyer's ability to acquire the Property.

10.6     OFAC.  Neither Buyer nor, to Buyer's Knowledge, any direct or indirect owner of Buyer is (a) identified on the OFAC List (as hereinafter defined) or (b) a person with whom a citizen of the United States is prohibited to engage in transactions by any trade embargo, economic sanction, or other prohibition of United States law, rule, regulation or Executive Order of the President of the United States.  The term "OFAC List" shall mean the list of specially designated nationals and blocked persons subject to financial sanctions that is maintained by the U.S. Treasury Department, Office of Foreign Assets Control and any other similar list maintained by the U.S. Treasury Department, Office of Foreign Assets Control pursuant to any law, rule, regulation or Executive Order of the President of the United States, including, without limitation, trade embargo, economic sanctions, or other prohibitions imposed by Executive Order of the President of the United States.

10.7     Survival.  Notwithstanding anything to the contrary contained elsewhere herein, the representation and warranties of Buyer set forth in this Section 10 shall not survive Closing.


11.     ADDITIONAL CLOSING COVENANTS.

11.1     Maintenance of Property.  Prior to Closing, Seller shall maintain and operate the Property in the same manner and in substantially the same condition as exists on the Effective Date or as applicable, and consistent with the terms of the Lease, cause Tenant to do same.

11.2     No Transfers or Liens. Prior to Closing Seller shall not encumber the Property, or grant any interest in the Property or licenses relating thereto to any third party the effect of which would be to impair, affect or delay Seller's ability to convey the Property to Buyer in accordance with the terms hereof or otherwise adversely affect the Property in any manner.

11.3     No Change. From and after the Effective Date, Seller shall not, without the prior written consent of Buyer (which shall not be unreasonably withheld, conditioned or delayed), (i) enter into any new, or make any amendments of any existing, easements or restrictions affecting the Property; or (ii) initiate or acquiesce in any request for a change in zoning classification or variance with respect to the Land.

11.4 Default Notices. Seller shall, to the extent received by Seller, from the Effective Date until Closing, promptly deliver to Buyer copies of (i) all written default and other material notices to or from the service providers under any Service Contracts or in connection with any of the REAs relating to the Property, (ii) notices of violations and any other material notices received from any governmental authority with respect to the Property, (iii) notices regarding regulations or laws affecting the Property, and (iv) all written default notices and other material notices under the Lease.

11.5 Removal of Personal Property. No fixtures, equipment, tools, or personal property included in this sale shall be removed from the Property unless the same are replaced with similar items of at least equal quality prior to the Closing Date. Additionally, at the Closing all supplies in the Property shall remain for the benefit of the Buyer with no adjustment due Seller for the cost or value of the supplies.

11.6 Alterations. Seller shall not alter the Property or consent to such alteration except to complete any improvements or non-structural changes, installations, or decorations which may be required by law or as required under the Lease.

11.7 Tax Certiorari. Seller shall not withdraw, settle or otherwise compromise any protest or reduction proceeding affecting real estate taxes assessed against the Property for any fiscal period in which the Closing Date is to occur or any subsequent fiscal period without the prior written consent of Buyer, which consent shall not be unreasonably withheld. Real estate tax refunds and credits received after the Closing Date which are attributable to the fiscal tax year during which the Closing Date occurs shall be apportioned between Seller and Buyer, after deducting the expenses of collection thereof, which obligation shall survive the Closing.

11.8 Leases. Seller shall not enter into any new lease for any space in the Property which may become vacant without Buyer's prior written consent which may not be unreasonably withheld, conditioned or delayed.

12.     DEFAULT AND REMEDIES.

12.1     Buyer's Pre-Closing Remedies. Subject to the provisions of the last sentence of this Section 12. 1, if the purchase and sale of the Property pursuant to this Agreement does not occur by reason of Seller's default in its obligations hereunder or due to Seller's breach of any representation or warranty contained in this Agreement, and Seller fails to cure such default or breach as per the provisions of this Agreement within five (5) Business Days after receipt of notice

of default from Buyer, the parties hereto agree that Buyer's sole remedy shall be limited to either: (a) the termination of this Agreement by written notice delivered to Seller, in which event the Earnest Money shall be promptly refunded to Buyer (not to be conditioned in any way on the prior consent of the Seller); or (b) close on the purchase of the Property without any abatement or reduction of the Purchase Price or other liability on the part of Seller; or (c) in the case of Seller's failure to convey the Property to Buyer or to perform any other obligation under this Agreement, Buyer shall be entitled to enforce specific performance of such obligation and this Agreement against Seller; provided, that any action for specific performance must be commenced within ninety (90) days after the scheduled Closing Date. Notwithstanding anything herein to the contrary, in the event that Seller willfully and intentionally defaults in its obligations under this Agreement for the intended purpose of preventing Buyer from purchasing the Property and if specific performance is not a commercially reasonable available remedy because of Seller's affirmative or intentional acts or omissions, Buyer shall have the right to pursue any remedy at law or in equity including, without limitation, a claim for money damages, but excluding any claim or remedy for punitive damages. Buyer shall be solely responsible for the costs associated with any post-closing claims made to enforce any breach of the representations, warranties and covenants made by Seller hereunder that expressly survive the Closing up to $10,000. Seller shall only be responsible for the cost of any such claims in excess of $10,000; provided that Seller's liability hereunder shall be limited to $300,000 in the aggregate.

12.2    Seller's Pre-Closing Remedies. If Buyer fails to perform in accordance with the terms of this Agreement and such failure continues for five (5) days following Seller's written notice thereof to Buyer, Seller shall, as its sole remedy, have the right to terminate this Agreement by delivering written notice to Buyer whereupon the amount of Earnest Money then on deposit shall be forfeited to Seller as liquidated damages (which shall be Seller's sole and exclusive remedy against Buyer), it being agreed between the parties hereto that the actual damages to Seller in such event are impractical to ascertain and the amount of the Earnest Money is a reasonable estimate thereof and shall be and constitute valid liquidated damages, at which time this Agreement shall be null and void and neither party shall have any rights or obligations under this Agreement except for the Surviving Obligations.

12.3    Pre-Closing Knowledge. If at any time after the expiration of the Study Period, Buyer becomes aware of any fact which makes a representation and warranty of Seller contained in this Agreement become untrue in any material adverse respect ("Materially Untrue"), Buyer shall promptly disclose such fact in writing to the Seller, which shall have five (5) days to cure any matter or matters that may be making any such representation or warranty Materially Untrue and if necessary the Closing shall be postponed until Seller has cured such matter or matters or such matters are waived by Buyer. In the event any representation or warranty made by Seller is Materially Untrue as described above, and Seller when making any representation or warranty on the Effective Date had no actual knowledge of same, then the sole remedy of the Buyer shall be to either (a) terminate this Agreement by written notice within five (5) Business Days after the expiration of the cure period or any extension thereof, if such breach has not been cured or (b) elect to proceed to Closing, in which case Buyer shall be deemed to have waived its rights with respect to any such breach of representation or warranty. Absent any notice to the contrary, Buyer party shall conclusively be deemed to have elected to proceed under clause (a) above. If Buyer elects to terminate this Agreement, then neither party shall have any further rights or obligations under this Agreement except for the Surviving Obligations. Buyer shall be prohibited from making

any claims against Seller after the Closing with respect to any breaches of the Seller's representations and warranties as to which Buyer had knowledge prior to the Closing, excluding any intentional misrepresentation by Buyer as of the Effective Date.

13.     <u>LIMITATION OF LIABILITY.</u>  No constituent member in, or agent of, Seller or Buyer, nor any advisor, trustee, director, officer, member, employee, beneficiary, shareholder, participant, representative or agent of any corporation, limited liability company or trust that is or becomes a constituent member in Seller or Buyer, shall have any personal liability in connection with this Agreement and Buyer and its successors and assigns shall look solely to Seller's or Buyer's assets for the payment of any claim or for any performance, and Buyer and Seller hereby waives any and all such personal liability.  The provisions of this Section shall survive the Closing or any termination of this Agreement.

14.     <u>ASSIGNMENT.</u>  Except for an assignment expressly permitted under this <u>Section 14,</u> Buyer shall not assign this Agreement without the prior written consent of Seller, which consent shall not be unreasonably withheld, delayed or conditioned. Notwithstanding the foregoing, Buyer shall have the absolute right to assign its rights hereunder to (i) any related entity that is owned (directly or indirectly) in part, managed or controlled by Buyer or affiliates of Buyer, (ii) to any entity in which Buyer or the principals of Buyer are principals, (iii) to a newly formed special purpose entity, or (iv) in connection with a Section 1031 like-kind exchange, each without the Seller's prior consent.  In the event of an assignment, Buyer shall remain liable for any and all of its obligations hereunder, and Buyer's assignee shall agree to be fully bound by the terms and conditions of this Agreement as if said assignee were the original signatory hereto.  Buyer shall provide Seller with a copy of its permitted Assignment of Purchase Agreement at least five (5) Business Days prior to Closing.

15.     <u>BROKERS.</u>  Seller and Buyer each represent to the other that neither has engaged any broker, finder or other agent with regard to the Property or the transactions contemplated hereby other than the Broker named herein.  Seller shall solely pay a broker commission to Broker in accordance with the terms of a separate written agreement.

16.     <u>NOTICES.</u>  All notices or other communications required or provided to be sent by either party shall be in writing and shall be sent by: (i) by United States Postal Service, certified mail, return receipt requested, (ii) by any nationally known overnight delivery service for next day delivery, (iii) delivered in person or (iv) sent by electronic mail (with a copy thereof sent thereafter in accordance with clause (i), (ii) or (iii) above).  All notices shall be deemed to have been given upon receipt. All notices shall be addressed to the parties at the addresses below:

To Seller:              STAG Williamsport, LLC
                        One Federal Street, 23rd Floor
                        Boston, MA 02110
                        Attn:  Alan Simmons, Senior Vice President and
                                  Assistant General Counsel
                        Phone: (617) 226-4977
                        *Email:  ASimmons@stagindustrial.com*

To Buyer:                    BHN Associates LLC
                             240 Adar Ct.
                             Monsey, NY 10952
                             Attention: Samuel Blum
                             Email:   samuel@bhnassociates.com

With a copy to:              Reiss Sheppe LLP
                             425 Madison Avenue, 19th Floor
                             New York, New York 10017
                             Attn: Stephen Friedman
                             E: sfriedman@reisssheppe.com

subject to the right of either party to designate a different address for itself by notice similarly given. Any notice or demand so given shall be deemed to be delivered or made on the next Business Day if sent by overnight courier or on the 3rd Business Day after the same is deposited in the United States Mail as registered or certified matter, with postage thereon fully prepaid or on the day of delivery if personally delivered.

17.    MISCELLANEOUS.

    17.1    Entire Agreement.  This Agreement including all Exhibits constitutes the entire agreement between the parties respecting the matters herein set forth and supersedes all prior agreements, oral or written, between the parties hereto respecting such matters. No amendment or modification of this Agreement shall be valid unless executed in writing and signed by the parties hereto. No waiver of any of the provisions of this Agreement shall be valid unless in writing and signed by the party against whom enforcement is sought.

    17.2    Headings.  The headings in this Agreement are for convenience only and shall not be used in interpreting any of the provisions of this Agreement.

    17.3    Attorney's Fees.  In connection with any litigation including appellate court proceedings arising out of this Agreement or related to the transactions contemplated hereby, the prevailing party shall be entitled to recover from the losing party its reasonable attorney's fees and costs incurred in enforcing its rights and remedies hereunder, including costs of collection prior to instigating litigation.

    17.4    Governing Law, Severability.  This Agreement shall be governed by the laws of the Commonwealth of Pennsylvania and any provision of this Agreement which is unenforceable or is invalid or contrary to the law of the Commonwealth of Pennsylvania shall be of no effect and in such case, all the remaining terms and provisions of this Agreement shall be fully effective according to the tenor of this Agreement, the same as though no such invalid portion had ever been included.  Any party may commence any action, litigation or proceeding of any kind whatsoever against any other party in any way arising from or relating to this Agreement and all contemplated transactions, including, but not limited to, contract, equity, tort, fraud and statutory claims, in the US District Court for the county where the Property is located or, if such court does not have subject matter jurisdiction, the courts of the Commonwealth of Pennsylvania sitting in county

20

where the Property is located and any appellate court from any thereof. Each party submits to the nonexclusive jurisdiction of such courts and agrees that any such action, litigation or proceeding may be brought in the US District Court where the Property is located or, if such court does not have subject matter jurisdiction, the courts of the Commonwealth of Pennsylvania sitting in the county where the Property is located. Each party agrees that a final judgment in any such action, litigation or proceeding is conclusive and may be enforced in other jurisdictions by suit on the judgment or in any other manner provided by law

 17.5 Confidentiality.  Buyer shall not make any public disclosure of the terms of this transaction or any data or information regarding the Property without the prior written consent of Seller, or as required by law, applicable governmental regulation.  The obligations under this Section shall be Surviving Obligations.

 17.6 No Partnership or Joint Venture.  Nothing contained in this Agreement shall be construed to create a partnership or joint venture between the parties or their successors in interest or any other relationship other than seller and buyer with respect to the Property.

 17.7 Waiver of Jury Trial.  The parties each hereby waive any right to jury trial in the event of any action relating to this Agreement, or the transactions described here, or obligations contemplated hereunder.

 17.8 Counterparts.  This Agreement may be executed and delivered in any number of counterparts, each of which so executed and delivered shall be deemed to be an original and all of which shall constitute one and the same instrument.  A party may deliver executed signature pages to this Agreement by facsimile transmission or via electronic mail to the other party, which facsimile or electronic copies shall be deemed to be an original executed signature page binding on the party that so delivered the executed signature page by facsimile or electronic mail.

 17.9 No Third-Party Beneficiaries.  It is not intended that there be, and there shall not be, any third-party beneficiaries to this Agreement.

 17.10 Construction.  This Agreement has been the result of negotiations and discussions between Buyer and Seller and their respective counsel. Consequently, this Agreement shall not be construed against a party by virtue of having been the party who drafted the Agreement.

 17.11 Indemnification Claims.  The indemnifications contained in this Agreement shall be subject to the following provisions:  the indemnitee shall notify indemnitor of any such claim against indemnitee within thirty (30) days after it has written notice of such claim, but failure to notify indemnitor shall in no case prejudice the rights of indemnitee under this Agreement unless indemnitor shall be prejudiced by such failure and then only to the extent of such prejudice.  The obligations set forth in this Section 17.12 shall be Surviving Obligations.

 17.13 No Memorandum of Agreement. No notice or memorandum of this Agreement shall be recorded in any public record and any action taken by Buyer in respect thereof shall constitute a material breach by Buyer, entitling Seller to terminate this Agreement.  Buyer shall indemnify and save Seller harmless from and against any actual loss, cost, liability, damage, reasonable third-party out-of-pocket fee or expense, including, without limitation, reasonable

attorneys' fees and expenses, arising out of any recording of any notice or memorandum of this Agreement.

17.14   <u>Tax Deferred Exchange</u>.  Seller has advised Buyer that Seller may desire to enter into a like-kind exchange under Section 1031 of the Internal Revenue Code of 1986, as amended, and the regulations promulgated thereunder, in connection with the sale of the Property to Buyer (the "<u>Tax Deferred Exchange</u>").  Buyer agrees to cooperate as reasonably requested with Seller in connection with any such Tax Deferred Exchange, provided that: (a) Buyer shall not incur any liabilities or costs in connection with such cooperation or any other matter relating to the Tax Deferred Exchange; and (b) in no event will any matter relating to the Tax Deferred Exchange, including Seller's inability to obtain any benefits of a tax deferred exchange, relieve the Seller of any of its obligations under this Agreement.  In the event Seller elects to pursue the Tax Deferred Exchange Seller may assign its interest in this Agreement to effectuate such Tax Deferred Exchange and shall promptly so notify Buyer, and, upon request, Buyer shall acknowledge such assignment and execute such other documents as are reasonably necessary or customarily used to accomplish such like-kind exchanges.

17.15   <u>Violations</u>. If, following the expiration of the Study Period and prior to the Closing, the Property becomes subject to any notes or notices of violation of law or municipal ordinances, orders or requirements, that have been noted in or issued by any federal, state or municipal department having jurisdiction, and which have not been fully remedied and discharged of record ("Violations"), Seller shall have the option to fully cure and discharge each such Violation at Seller's sole cost and expense (provided that if, despite Seller's diligent efforts, such Violations cannot be cured by the Closing Date, Seller shall have the right to adjourn the Closing Date until such Violations can be cured). If Seller chooses not to fully cure and discharge each such Violation, Buyer shall have the option of either (a) accepting the Property as it then is and proceeding to Closing or (b) terminating this Agreement, in which event the Deposit shall be promptly returned to Buyer and Seller and Buyer shall have no further obligations or liabilities hereunder other than those which expressly survive the termination of this Agreement.

17.16.   <u>Novation</u>. Buyer has advised Seller, and Seller acknowledges, that Buyer is entering into this Agreement on behalf of a limited liability company(ies) to be formed (the "New LLC"), which New LLC shall obtain title at Closing to the Property, as Buyer does not intend to obtain legal or equitable title to the Property.  In furtherance of the foregoing, Buyer shall have the right, prior to Closing, to be substituted as the Buyer under this Agreement by the New LLC through a novation (the "<u>Novation</u>"), which Novation shall be effectuated through the execution by Buyer, New LLC and Seller of an agreement substantially the form attached hereto as <u>Exhibit D</u> (the "<u>Novation Agreement</u>").  Seller shall, at the request of Buyer, execute the Novation Agreement. Buyer shall provide Seller with a copy of the Novation Agreement for Seller's execution no later than three (3) days prior to Closing. Any expense relating to the Novation shall be borne by Buyer, including, without limitation, any realty transfer tax liability, and Buyer and the New LLC shall indemnify, defend and hold Seller harmless from and against any and all realty transfer taxes and any and all other costs or expenses that may be incurred by Seller in connection with the Novation. Prior to the execution and delivery of the Novation by all the parties thereto, Buyer shall be liable for all obligations of the "Buyer" under this Agreement, subject only to the limitations of liability expressly set forth herein. This Section shall survive Closing.

17.16   <u>Bulk Sales</u>. After the date hereof but no later than ten (10) days prior to Closing, Seller shall give any and all appropriate notices to the Pennsylvania Department of Revenue and Department of Labor & Industry as required under those certain laws of the Commonwealth of Pennsylvania that require such department to be notified, in advance of the Closing Date, of the proposed sale and transfer of the Property by Seller to Buyer (the "<u>Bulk Sales Laws</u>"). Prior to Closing, and to the extent required by the Bulk Sales Laws, Seller shall in good faith and with reasonable diligence apply for all clearance certificates evidencing the payment by Seller of certain taxes, assessments and contributions to the Commonwealth of Pennsylvania as required by the Bulk Sales Laws (the "<u>Clearance Certificates</u>"), and if received, shall deliver such Clearance Certificates to Buyer on or as soon after the Closing Date as is reasonably possible. The parties acknowledge that, as a result of procedures for the administration of applications for such Clearance Certificates, and anticipated delays therein, it may not be reasonably possible for Seller to obtain and deliver such Clearance Certificates, if required, as of the Closing Date, or for some period of time thereafter. If any such required Clearance Certificate is not available at the Closing, the failure to deliver such Clearance Certificate shall not constitute a default by Seller or a deficiency in title. Seller shall pay all taxes, fines and penalties which are due and owing as a result of the bulk sale nature of this transaction. In all events, Seller shall indemnify, defend and hold Buyer harmless from and against any and all obligations to pay, any and all taxes, fines, penalties, costs and/or expenses resulting from the fact that the transactions contemplated under this Agreement constitute a 'bulk transfer" or "bulk sale" of Seller's assets and/or real property under the laws of the Commonwealth of Pennsylvania  The foregoing indemnity shall not expire and shall survive Closing until Seller delivers all such required Clearance Certificates, if any.

[Signature Page(s) Follow]

**IN WITNESS WHEREOF,** the parties hereto have executed this Agreement as of the date set forth below.

**SELLER**:

STAG Williamsport, LLC,
a Delaware limited liability company

By: _____

Name: __David G. King_____

Its: ___Vice President_____

**BUYER**:

BHN Associates LLC,
A New York limited liability company

By: _____

Name: _____

Its: _____

24

**IN WITNESS WHEREOF,** the parties hereto have executed this Agreement as of the date set forth below.

**SELLER:**

STAG Williamsport, LLC,
a Delaware limited liability company

By: _____

Name: _____

Its: _____


**BUYER:**

BHN Associates LLC,
A New York limited liability company

By: _A.Weber_____

Name: _Weber_____

Its: _Princpl_____

24

# Exhibit

# 2

## SCHEDULE 1

## ESCROW AGREEMENT

The Deposit paid under this Agreement (the "Escrow Funds") shall be held in escrow by the Escrow Agent, subject to the terms of this Agreement, and shall be duly accounted for in accordance with this Agreement. The Escrow Funds shall be invested and held in an interest-bearing, escrow account, and such Escrow Funds and any interest thereon shall be paid to the party entitled to the Deposit under this Agreement.

(a) The Escrow Agent shall be obligated to perform as Escrow Agent only such duties as are specifically set forth in this Agreement and shall not be liable for any action taken, omitted or suffered by it in good faith and believed by it to be authorized or within the discretion or rights or powers conferred upon it hereby, and may conclusively rely and shall be protected in acting or refraining from acting in reliance upon an opinion of independent counsel selected by the Escrow Agent or upon any order, notice, instruction, certificate, request or other document or endorsement thereon believed by it to be genuine and to have been signed or presented by the proper party or parties. The Escrow Agent shall not be bound by any modification of this Agreement unless such modification is in writing and signed by the parties hereto, and, if its duties hereunder are or may be affected, unless it shall have given prior written consent thereto. If a controversy arises between any of the parties hereto or between any of the parties hereto and any person not a party hereto as to whether or not or to whom the Escrow Agent shall deliver all or any portion of the Escrow Funds or any interest accrued thereon, or in the event that the Escrow Agent shall be uncertain as to its duties or rights hereunder or shall receive instructions with respect to the Escrow Funds which in its opinion are in conflict with any of the provisions of this Agreement, the Escrow Agent shall be entitled to refrain from taking any action other than to keep safely the Escrow Funds until it shall have been directed otherwise by a writing signed by the parties hereto or by final order of a court of competent jurisdiction.

In the event conflicting demands are made or notices served upon the Escrow Agent with respect to the Escrow Funds, the parties hereto expressly agree that such Escrow Agent shall have the absolute right, at such Escrow Agent's election, to do either or both of the following, unless any return of the Escrow Funds to Buyer is not conditioned on the prior consent of the Seller:

(1) Withhold and stop all further proceedings in, and performance of this Agreement for a reasonable period of time to permit resolution, failing which the Escrow Agent shall follow the provisions of subparagraph (2) or (3) of this Paragraph (a); or

(2) In the event of litigation between SELLER and BUYER, the Escrow Agent may deliver all of the Escrow Funds to the Clerk of any Court in which the litigation is pending; or

25

(3)   File a suit in interpleader and deliver the Escrow Funds to the Court in which the action is commenced, and obtain an order from the court requiring the parties to interplead and litigate in such court their several claims and rights amongst themselves.  In the event such interpleader suit is brought, such Escrow Agent shall ipso facto be fully released and discharged from all obligations to further perform any and all duties or obligations imposed upon it by this Agreement.

The Escrow Agent shall not be responsible in any manner whatsoever for any failure or inability of SELLER or BUYER to honor or comply with any provisions of this Agreement.  The Escrow Agent shall incur no liability hereunder whatsoever except in the event of its willful misconduct or gross negligence.  The other parties hereto, jointly and severally, agree to defend and indemnify the Escrow Agent against all costs, obligations and liabilities including reasonable third-party out-of-pocket attorney's fees, suffered by it or for which it may be claimed to be liable hereunder, except for that occasioned by its willful misconduct or gross negligence.  The indemnity provided in the preceding sentence shall survive any termination of this Agreement, and delivery of the Escrow Funds.

Following distribution of all amounts contained in the Escrow Funds in accordance with this Agreement, the Escrow Agent shall have no further rights or obligations hereunder.

Seller and Buyer do hereby certify that they are aware that the Federal Deposit Insurance Corporation ("FDIC") coverages apply only to a cumulative maximum amount of $250,000 for each individual deposit for all of the depositor's accounts at the same or related institution.  The parties hereto further understand that certain banking instruments such as, but not limited to, repurchase agreements and letters of credit are not covered at all by FDIC insurance.

Further the parties hereto understand that Title Company assumes no responsibility for, nor will the parties hereto hold Title Company liable for, a loss occurring which arises from the fact that the amount of the above account may cause the aggregate amount of any individual depositor's accounts to exceed $250,000 and that the excess amount is not insured by the Federal Deposit Insurance Corporation or that FDIC insurance is not available on certain types of bank instruments.

[Signature Page Follows]

26

## JOINDER BY THE TITLE INSURER

By its execution hereof, the Title Insurer hereby (i) covenants and agrees to hold the Escrow Funds in accordance with the above provisions, and (ii) acknowledges receipt of a copy of the Purchase and Sale Agreement to which this Schedule 1 is attached.

First American Title Insurance Company

By:   _Anthony Bucchere_____
      Name: _Anthony J. Bucchere_____
      Title: _VP & Counsel_____

# Exhibit

# 3



## <u>NOTICE OF DEFAULT</u>

August 30, 2021

BHN Associates LLC
240 Adar Ct.
Monsey, New York 10952
Attention: Samuel Blum
Email: samuel@bhnassociates.com

Reiss Sheppe LLP
425 Madison Avenue, 19th Floor
New York, New York 10017
Attention: Stephen Friedman
Email: sfriedman@reisssheppe.com

**VIA FEDERAL EXPRESS**

RE:     **Sale of 3300 Wahoo Drive, Williamsport, Pennsylvania**

Dear Mr. Blum and Mr. Friedman:

Reference is hereby made to that certain Purchase and Sale Agreement dated as of June 7, 2021, by and between STAG Williamsport, LLC, as Seller, and BHN Associates, LLC, as Buyer (the "Purchase Agreement"). Capitalized terms used but not otherwise defined herein shall have the meaning ascribed in the Lease.

Seller hereby notifies Buyer that Buyer is breach of the Purchase Agreement by failing to deliver, or cause to be delivered, the Purchase Price to the Escrow Agent in accordance with the terms of the Purchase Agreement. If Buyer does not cure the aforementioned default and proceed to Closing within five (5) days of the date hereof, Seller shall terminate this Agreement and the Earnest Money shall be disbursed to Seller.

Seller hereby expressly reserves any and all rights and remedies that Seller may hold, at law or in equity under the Purchase Agreement.

Very Truly Yours,

*Colleen O'Connor*

Colleen O'Connor
Associate Counsel

Cc:      *(via email only)*
           Alan Simmons, STAG Industrial, Inc.
           Sigrid Wheatley, STAG Industrial, Inc.
           Rob Hawkins, STAG Industrial, Inc.

# Exhibit

# 4



# <u>NOTICE OF TERMINATION</u>

September 7, 2021

BHN Associates LLC
240 Adar Ct.
Monsey, New York 10952
Attention: Samuel Blum
Email: samuel@bhnassociates.com

Reiss Sheppe LLP
425 Madison Avenue, 19th Floor
New York, New York 10017
Attention: Stephen Friedman
Email: sfriedman@reisssheppe.com

**VIA FEDERAL EXPRESS**

RE:     **Sale of 3300 Wahoo Drive, Williamsport, Pennsylvania**

Dear Mr. Blum and Mr. Friedman:

Reference is hereby made to that certain Purchase and Sale Agreement dated as of June 7, 2021, by and between STAG Williamsport, LLC, as Seller, and BHN Associates, LLC, as Buyer (the "Purchase Agreement"). Capitalized terms used but not otherwise defined herein shall have the meaning ascribed in the Purchase Agreement.

Seller hereby notifies Buyer that Seller is terminating the Purchase Agreement pursuant to Section 12.2 thereof. By notice dated August 30, 2021, Seller previously notified Buyer of Buyer's breach of the Purchase Agreement for failing to deliver, or cause to be delivered, the Purchase Price to the Escrow Agent. Buyer has failed to cure such breach within the specified cure period. Accordingly, Seller is electing to terminate the Purchase Agreement and is entitled to the Earnest Money on deposit with the Escrow Agent.

Seller hereby expressly reserves any and all rights and remedies that Seller may hold, at law or in equity under the Purchase Agreement.

Very Truly Yours,

*Colleen O'Connor*

Colleen O'Connor
Associate Counsel

Cc:     (*via email only*)
        Alan Simmons, STAG Industrial, Inc.
        Sigrid Wheatley, STAG Industrial, Inc.
        Rob Hawkins, STAG Industrial, Inc.
        Anthony Bucchere, First American Title Insurance Company

Notice sent
10.18.21

BMG
AF up

B Assoc

MS

10/14

NOTIFY

3

## COMMONWEALTH OF MASSACHUSETTS

SUFFOLK, SS

SUPERIOR COURT
DOCKET NO. 21-2248-E

STAG WILLIAMSPORT, LLC,

      Plaintiff,

v.

BHN ASSOCIATES, LLC, FIRST
AMERICAN TITLE INSURANCE
COMPANY, and *in rem* against CERTAIN
FUNDS HELD IN ESCROW BY THE
BOSTON OFFICE OF FIRST AMERICAN
TITLE INSURANCE COMPANY,

      Defendants.

*10/1/2021*

(Mullin, J)

ALLOWED

10-19-21

## <u>MOTION TO APPOINT SPECIAL PROCESS SERVER</u>

Pursuant to Mass. R. Civ. Pro. 4(C), the Plaintiff, Plaintiff STAG Williamsport, LLC's

("Plaintiff") respectfully moves that this Court authorize service of process in this case to be

made upon the defendants other than by a Sheriff or his Deputy, and to permit said service to be

made by an authorized individual from Suvalle Jodrey above the age of 19, experienced in the

service of process, and have no interest in this case, or any other person who is duly authorized

to serve process under Massachusetts law.

As grounds for this motion, Plaintiff states that service in this manner would appear to be

the most efficient and effective means of facilitating the giving of notice to the defendants.

AFDOCS/24682894.1

Respectfully submitted,

STAG WILLIAMSPORT, LLC
By its attorneys,

Date:  September 30, 2021

/s/ *Benjamin M. Greene*
Benjamin M. Greene, BBO# 696850
Arent Fox LLP
Prudential Tower
800 Boylston Street
Boston, MA  02199-8004
(617) 973-6100
Benjamin.Greene@arentfox.com

I HEREBY ATTEST AND CERTIFY ON

Dec. 21, 2021 THAT THE
FOREGOING DOCUMENT IS A FULL,
TRUE AND CORRECT COPY OF THE
ORIGINAL ON FILE IN MY OFFICE,
AND IN MY LEGAL CUSTODY.

MICHAEL JOSEPH DONOVAN
CLERK / MAGISTRATE
SUFFOLK SUPERIOR CIVIL COURT
DEPARTMENT OF THE TRIAL COURT

BY:

Deputy Assistant Clerk



# COMMONWEALTH OF MASSACHUSETTS

**SUFFOLK, ss.**

**SUPERIOR COURT**
**2184CV02248**

### STAG Williamsport, LLC

### vs.

### BHN Associates, LLC et al.

## NOTICE OF DENIAL OF ACCEPTANCE INTO
## THE BUSINESS LITIGATION SESSION

This case came before the court for review after initial filing in the Business Litigation Session.  However, after review, acceptance into the Business Litigation Session is denied.

This case is referred to the Clerk's Office for reassignment.

I HEREBY ATTEST AND CERTIFY ON
Dec. 21, 2021, THAT THE
FOREGOING DOCUMENT IS A FULL,
TRUE AND CORRECT COPY OF THE
ORIGINAL ON FILE IN MY OFFICE,
AND IN MY LEGAL CUSTODY.

MICHAEL JOSEPH DONOVAN
CLERK / MAGISTRATE
SUFFOLK SUPERIOR CIVIL COURT
DEPARTMENT OF THE TRIAL COURT

BY: _____
Deputy Assistant Clerk

/s/ Kenneth W. Salinger

_____
Kenneth W. Salinger
Justice of the Superior Court &
Administrative Justice of the
Business Litigation Session

Dated:  Oct. 4, 2021

11/04

NOTIFY

5

## COMMONWEALTH OF MASSACHUSETTS

**SUFFOLK, SS**

**SUPERIOR COURT**
**C.A. NO. 2184CV02248**

Notice
Sent
11.08.21
BMG
AFLYP
SCO
FALG
BAllc
mo

---

STAG WILLIAMSPORT, LLC,
    **Plaintiff**

v.

BHN ASSOCIATES, LLC; FIRST AMERICAN TITLE
INSURANCE COMPANY; and, in rem CERTAIN
FUNDS HELD IN ESCROW BY THE BOSTON
OFFICE OF FIRST AMERICAN TITLE INSURANCE
COMPANY,
    **Defendants**

2021 NOV -1  P 1: 52

---

### ASSENTED TO MOTION OF FIRST AMERICAN TITLE INSURANCE COMPANY TO ENLARGE TIME TO RESPOND TO COMPLAINT

(mu116, J.)

    NOW comes Defendant First American Title Insurance Company ("First American") and

moves to enlarge its time to respond to the complaint to on or before November 30, 2021.

Plaintiff STAG assents to this motion.

                        Respectfully submitted,
                        First American Title Insurance Company
                        By its attorney:

                        /s/ Scott C. Owens
                        Scott C. Owens, Esq. (BBO#654406)
                        First American Law Group
                        800 Boylston Street, Suite 2820
                        Boston, MA 02199
                        617-772-9272
                        sowens@firstam.com

October 29, 2021

ALLOWED

11.4.21

Assented to:

I HEREBY ATTEST AND CERTIFY ON

Dec. 21, 2021, THAT THE
FOREGOING DOCUMENT IS A FULL,
TRUE AND CORRECT COPY OF THE
ORIGINAL ON FILE IN MY OFFICE,
AND IN MY LEGAL CUSTODY.

MICHAEL JOSEPH DONOVAN
CLERK / MAGISTRATE
SUFFOLK SUPERIOR CIVIL COURT
DEPARTMENT OF THE TRIAL COURT
BY:
Deputy Assistant Clerk

STAG Williamsport, LLC
By its attorney:

/s/ Benjamin M. Greene

Benjamin M. Greene, Esq. (BBO#696850)
Arent Fox, LLP
800 Boylston Street
Boston, MA 02199
617-973-6100
Benjamin.Greene@arentfox.com

6

| CIVIL ACTION COVER SHEET | DOCKET NUMBER<br>2184-CV-02248 | Trial Court of Massachusetts<br>The Superior Court |
|---|---|---|
| | | COUNTY Suffolk Superior Court (Boston) |

| Plaintiff | STAG WILLIAMSPORT, LLC | Defendant: | BHN ASSOCIATES, LLC |
|---|---|---|---|
| ADDRESS: | One Federal St. 23rd Floor<br>Boston, MA 02110 | ADDRESS: | 240 Adar Ct., Monsey, NY   10952 |
| Plaintiff Attorney: | Benjamin M. Greene | Defendant: | FIRST AMERICAN TITLE INSURANCE COMPANY |
| ADDRESS: | Arent Fox LLP, Prudential Tower, 800 Boylston Street Boston, MA 02199-8004 | ADDRESS: | 800 Boylston Street, Suite 2820, Boston, MA 02199 |
| BBO: | 696850 | | |
| Plaintiff Attorney: | | Defendant: | CERTAIN FUNDS HELD IN ESCROW BY THE BOSTON OFFICE OF<br>FIRST AMERICAN TITLE INSURANCE COMPANY |
| ADDRESS: | | ADDRESS: | 800 Boylston Street, Suite 2820, Boston, MA 02199 |
| BBO: | | | |

**TYPE OF ACTION AND TRACK DESIGNATION (see instructions section below)**

| CODE NO.<br>A08 | TYPE OF ACTION (specify)<br>Breach of Purchase and Sale Agreement | TRACK<br>F | HAS A JURY CLAIM BEEN MADE?<br>☐ YES   ☒ NO |
|---|---|---|---|

*If "Other" please describe:

| Is there a claim under G.L. c. 93A?<br>☐ YES   ☒ NO | Is there a class action under Mass. R. Civ. P. 23?<br>☐ YES   ☒ NO |
|---|---|

**STATEMENT OF DAMAGES PURSUANT TO G.L. c. 212, § 3A**

The following is a full, itemized and detailed statement of the facts on which the undersigned plaintiff or plaintiff's counsel relies to determine money damages.
For this form, disregard double or treble damage claims; indicate single damages only.

**TORT CLAIMS**

A. Documented medical expenses to date
  1. Total hospital expenses
  2. Total doctor expenses
  3. Total chiropractic expenses
  4. Total physical therapy expenses
  5. Total other expenses (describe below)

SUFFOLK SUPERIOR COURT
CIVIL CLERK'S OFFICE
**E - FILED**
11 - 2 = 21
MICHAEL JOSEPH DONOVAN
CLERK OF COURT

Subtotal (1-5):                          $0.00

B. Documented lost wages and compensation to date
C. Documented property damages to date
D. Reasonably anticipated future medical and hospital expenses
E. Reasonably anticipated lost wages
F. Other documented items of damages (describe below)

TOTAL (A-F):                          $0.00

G. Briefly describe plaintiff's injury, including the nature and extent of injury:

**CONTRACT CLAIMS**

☐ This action includes a claim involving collection of a debt incurred pursuant to a revolving credit agreement. Mass. R. Civ. P. 8.1(a).

| Item # | Detailed Description of Each Claim | Amount |
|---|---|---|
| 1. | Breach of Purchase and Sale Agreement | $450,000.00 |
| | Total | $450,000.00 |

SC0001: 1/22/2021

Date/Time Printed:11-02-2021 12:45:02



I HEREBY ATTEST AND CERTIFY ON
Dec. 21, 2021
THAT THE
FOREGOING DOCUMENT IS A FULL,
TRUE AND CORRECT COPY OF THE
ORIGINAL ON FILE IN MY OFFICE,
AND IN MY LEGAL CUSTODY.

MICHAEL JOSEPH DONOVAN
CLERK / MAGISTRATE
SUFFOLK SUPERIOR CIVIL COURT
DEPARTMENT OF THE TRIAL COURT

BY:

Deputy Assistant Clerk

| Signature of Attorney/Unrepresented Plaintiff: X   /s/ Benjamin M. Greene | Date:   November 2, 2021 |
|---|---|

**RELATED ACTIONS:** Please provide the case number, case name, and county of any related actions pending in the Superior Court.

| |
|---|

**CERTIFICATION PURSUANT TO SJC RULE 1:18**

I hereby certify that I have complied with requirements of Rule 5 of the Supreme Judicial Court Uniform Rules on Dispute Resolution (SJC Rule 1:18) requiring that I provide my clients with information about court-connected dispute resolution services and discuss with them the advantages and disadvantages of the various methods of dispute resolution.

| Signature of Attorney/Unrepresented Plaintiff: X   /s/ Benjamin M. Greene | Date:   November 2, 2021 |
|---|---|

COMMONWEALTH OF MASSACHUSETTS

SUFFOLK, SS

SUPERIOR COURT
C.A. NO. 2184CV02248

_____

STAG WILLIAMSPORT, LLC,
     Plaintiff

v.

E-FILED 11/29/21  (LAW)

BHN ASSOCIATES, LLC; FIRST AMERICAN TITLE
INSURANCE COMPANY; and, in rem CERTAIN
FUNDS HELD IN ESCROW BY THE BOSTON
OFFICE OF FIRST AMERICAN TITLE INSURANCE
COMPANY,
     Defendants

_____

## <u>**ANSWER OF DEFENDANT FIRST AMERICAN TITLE INSURANCE COMPANY**</u>

NOW comes Defendant First American Title Insurance Company ("First American") and generally states that it is without sufficient information to admit or deny the factual allegations set forth in Plaintiff's Verified Complaint.  Answering further, First American states as follows:

1.  First American is a California corporation with a principal business address of 1 First American Way, Santa Ana, California 92707.

2.  First American is the Escrow Agent under an Escrow Agreement entered into between Plaintiff STAG Williamsport, LLC ("STAG") and Defendant BHN Associates, LLC ("BHN").  See Verified Complaint, <u>Exhibit B</u>.

3.  Pursuant to the Escrow Agreement, First American has received $450,000.00 (the "Escrowed Funds"), which it currently holds in an interest-bearing account as required by the terms of the Escrow Agreement.

4.  On or about September 7, 2021, STAG purported to terminate the P&S and requested that First American release the Escrowed Funds to STAG.

5.  On or about September 29, 2021, BHN purported to reject STAG's termination, purported to terminate the P&S itself, and requested that First American release the Escrowed Funds to BHN.

6.  Pursuant to the express terms of the Escrow Agreement:

> If a controversy arises between any of the parties hereto . . . as to whether or not or to whom the Escrow Agent shall deliver all or any portion of the Escrowed Funds or any interest accrued thereon . . . the Escrow Agent shall be entitled to refrain from taking any action other than to keep safely the Escrowed Funds until it shall have been directed otherwise by a writing signed by the parties hereto or by final order of a court of competent jurisdiction.

Verified Complaint, Exhibit B at Paragraph (a).

7.  A controversy has arisen between STAG and BHN as to which of them the Escrowed Funds should be paid.

8.  First American continues to hold the Escrowed Funds safely in escrow.

9.  First American has not been directed to disburse the funds by a writing signed by the parties.

10. First American has not been directed to disburse the funds by a final order of any court of competent jurisdiction.

11. Furthermore, the Escrow Agreement expressly provides:

> In the event conflicting demands are made or notices served upon the Escrow Agent with respect to the Escrowed Funds, the parties hereto expressly agree that such Escrow Agent shall have the absolute right, at Escrow Agent's election, to do either or both of the following . . . :
>
> > (1) Withhold and stop all further proceedings in, and performance of this Agreement for a reasonable period of time to permit resolution . . .; or
> > (2) In the event of litigation between SELLER and BUYER, the Escrow agent may deliver all of the Escrow Funds to the Clerk of any Court in which the litigation is pending; or

> (3) File a suit in interpleader and deliver the Escrow Funds to the Court in which the action is commenced, and obtain an order from the court requiring the parties to interplead and litigate in such court their several claims and rights amongst themselves.

Verified Complaint, Exhibit B at Paragraph (a)(1) through (a)(3).

12. Conflicting demands and notices have been received by First American regarding the distribution of the Escrowed Funds.

13. Pursuant to First American's absolute right under the Escrow Agreement, First American withheld disbursement and stopped all further performance of the Escrow Agreement to permit a resolution between the parties.

14. Litigation has since been commenced between the parties which, pursuant to the terms of the Escrow Agreement, would allow First American to deliver the Escrowed Funds to the Clerk of the Court.

15. First American has no interest in the Escrowed Funds.

16. First American takes no position with regard to the merits of the dispute between the parties or either party's claims to the Escrowed Funds.

WHEREFORE, based on the foregoing, First American respectfully requests the Court for an Order regarding the disposition of the Escrowed Funds pending determination of the rights of the parties thereto. To the extent the Court orders the Escrowed Funds to be deposited with the Clerk, First American respectfully requests that it be provided with instructions for the same and that it be dismissed from all further involvement with this action upon tender of such deposit to the Clerk.

I HEREBY ATTEST AND CERTIFY ON
Dec. 21, 2021 , THAT THE
FOREGOING DOCUMENT IS A FULL,
TRUE AND CORRECT COPY OF THE
ORIGINAL ON FILE IN MY OFFICE,
AND IN MY LEGAL CUSTODY.

MICHAEL JOSEPH DONOVAN
CLERK / MAGISTRATE
SUFFOLK SUPERIOR CIVIL COURT
DEPARTMENT OF THE TRIAL COURT

BY:

Deputy Assistant Clerk

November 29, 2021

Respectfully submitted,
First American Title Insurance Company
By its attorney:

*Scott C Owens*

Scott C. Owens, Esq. (BBO#654406)
First American Law Group
800 Boylston Street, Suite 2820
Boston, MA 02199
617-772-9272
sowens@firstam.com

COMMONWEALTH OF MASSACHUSETTS

SUFFOLK, SS

SUPERIOR COURT
DOCKET NO.  2184-CV-02248

---

STAG WILLIAMSPORT, LLC,

      Plaintiff,

v.

BHN ASSOCIATES, LLC, FIRST
AMERICAN TITLE INSURANCE
COMPANY, and *in rem* against CERTAIN
FUNDS HELD IN ESCROW BY THE
BOSTON OFFICE OF FIRST AMERICAN
TITLE INSURANCE COMPANY,

    Defendants.

---

E-FILED 12/01/21  (LAW)

### MOTION FOR ORDER FOR DEFENDENANT FIRST AMERICAN TITLE INSURANCE TO DEPOSIT ESCROW FUNDS INTO COURT

Pursuant to Mass. R. Civ. P. 67 and Sup. Ct. R. 9A and Sup. Ct. R. 22, Plaintiff STAG

Williamsport, LLC's ("STAG" or "Plaintiff") respectfully requests that this Court enter an order

directing Defendant First American Title Insurance Company ("FATIC") to release the

$450,000.00 it is currently holding in escrow ("Escrowed Funds") to this Court, to be held in an

interest bearing account.

In support of this motion, Plaintiff states the following:

1.      On June 7, 2021, STAG and BHN entered into an agreement for the purchase and

sale of the Subject Property for $13,500,000.00 ("P&S Agreement").  Verified Complaint at ¶7.

2.      As part of the P&S Agreement, STAG and BHN agreed to appoint the Boston office

of FATIC to serves as their escrow agent for any funds provided by BHN, and subsequently

entered into an escrow agreement with FATIC ("Escrow Agreement").  *Id.* at ¶8.

3.　　　After executing the P&S Agreement, BHN deposited $200,000.00 with FATIC to be held in escrow. *Id.* at ¶9.

4.　　　Following the conclusion of the P&S Agreement's "Study Period," BHN deposited an additional $100,000.00 with FATIC to be held in escrow, for a total of $300,000.00 in Earnest Money. The Earnest Money is held as part of the Escrowed Funds. *Id.* at ¶10

5.　　　In addition to the Earnest Money, BHN exercised rights pursuant to Section 1.5 of the P&S Agreement to extend the Closing Date for two separate periods of 15-days each and in each instance paid to FATIC a non-refundable Extension Fee in the amount of $75,000, for a total of $150,000 in non-refundable Extension Fees. Any Extension Fee was to be applied to the purchase price at Closing in accordance with the terms of the P&S Agreement but was otherwise non-refundable. *Id.* at ¶11.

6.　　　Pursuant to the terms of the P&S Agreement STAG and BHN agreed to close on the sale of the Subject Property on August 23, 2021 ("Closing Date"). *Id.* at ¶ 15.

7.　　　On the Closing Date, BHN refused to close the sale. *Id.* at ¶16.

8.　　　Rather BHN asserted that STAG had not provided an appropriate Tenant Estoppel Certificate or an appropriate Subordination, Attornment and Non-disturbance Agreement, but notably BHN did not provide a notice of default to STAG under the P&S Agreement. *Id.* at ¶ 17.

9.　　　In response, STAG conveyed its position that, per the terms of the P&S Agreement, both of the documents it provided were acceptable, and that BHN had defaulted by refusing to close. *Id.* at ¶ 18.

10.　　　Even though STAG believed it had no obligation to provide different versions of the documents, on August 25, 2021, STAG provided BHN with a new Tenant Estoppel Certificate

and new Subordination, Attornment and Non-disturbance Agreement, both in forms that BHN had explicitly identified as acceptable. *Id.* at ¶ 19.

11.    After receiving these documents, BHN still refused to close on the sale of the Subject Property. *Id.* at ¶20.

12.    On August 30, 2021, by letter and email, STAG sent BHN a notice of Default. *Id.* at ¶21.

13.    After receiving the Notice of Default, BHN still refused to close on the sale of the Subject Property. *Id.* at ¶22.

14.    On September 7, 2021, by letter and email, STAG sent BHN a Notice of Termination, in which it asserted its right to the Escrowed Funds. *Id.* at ¶23.

15.    The September 7, 2021 email, which transmitted the Notice of Termination, was also sent to FATIC, and included an instruction to FATIC's representative stating "per the attached, we have terminated the Purchase Agreement and are requesting that the funds on deposit with respect to this transaction be delivered to STAG as Seller." *Id.* at ¶24.

16.    By letter, dated September 29, 2021, BHN: (1) rejected STAG's Notice of Termination; (2) sought to exercise its own right to terminate the P&S Agreement; and (3) requested that FATIC provide it with the Escrowed Funds. *Id.* at ¶25.

17.    FATIC has not released the Escrowed Funds to STAG. *Id.* at ¶26.

18.    Pursuant to the Escrow Agreement:

> In the event conflicting demands are made or notices served upon
> the Escrow Agent with respect to the Escrow Funds, the parties
> hereto expressly agree that such Escrow Agent shall have the
> absolute right, at such Escrow Agent's election, to do either or both
> of the following, unless any return of the Escrow Funds to Buyer is
> not conditioned on the prior consent of the Seller:
> ***

(2) In the event of litigation between SELLER and BUYER, the Escrow Agent may deliver all of the Escrow Funds to the Clerk of any Court in which the litigation is pending . . .

19.     Although otherwise amenable to releasing the Escrowed Funds, FATIC has taken the position, that unless and until it receives a court order, it will be unable to release the Escrowed Funds to the Court.

20.     This Court may, at is discretion, order that money be deposited into the Court. *See Commerce Insurance Company v. Szafarowicz*, 483 Mass. 247, 258 (2019); *Bd. of Trustees v. Chappelle*, 2012 Mass. Super. LEXIS 1399, at **1-2 (Apr. 10, 2012) (pursuant to Rule 67, directing party holding "surplus proceeds in which it has no stakes" to deposit funds into court for distribution by the court); Mass. R. Civ. Pro. 67. The Court should exercise its discretion in regard in this instance.

21.     As the Escrowed Funds will be deposited into an interest bearing account, neither party will be prejudiced by having the funds deposited into the Court.

22.     Additionally, after the Escrowed Funds are deposited into the Court, Plaintiff will stipulate to FATIC's dismissal from this action.

23.     Plaintiff is entitled to an order directing FATIC to deposit the funds in the registry of the Court to abide the outcome of this case.

**WHEREFORE**, Plaintiff respectfully requests that this Court:

A       Order FATIC to deposit the Escrowed Funds to this Court, to be held in an interest bearing account; and

B.      Issue such other further relief as the Court deems meet and just.

Respectfully submitted,

STAG WILLIAMSPORT, LLC
By its attorneys,

4

I HEREBY ATTEST AND CERTIFY ON

Dec. 21, 2021 , THAT THE
FOREGOING DOCUMENT IS A FULL,
TRUE AND CORRECT COPY OF THE
ORIGINAL ON FILE IN MY OFFICE,
AND IN MY LEGAL CUSTODY.

MICHAEL JOSEPH DONOVAN
CLERK / MAGISTRATE
SUFFOLK SUPERIOR CIVIL COURT
DEPARTMENT OF THE TRIAL COURT
BY:
Deputy Assistant Clerk

Date: November 2, 2021

/s/ *Benjamin M. Greene*
Benjamin M. Greene, BBO# 696850
Arent Fox LLP
Prudential Tower
800 Boylston Street
Boston, MA 02199-8004
 (617) 973-6100
Benjamin.Greene@arentfox.com

## CERTIFICATE OF SERVICE

I, Benjamin M. Greene, hereby certify that on this 2nd day of November, 2021, I caused a

copy of the within document to be served on the following parties and counsel of record by

electronic mail and/or first class mail.

Scott C. Owens
First American Law Group
800 Boylston Street, Suite 2820
Boston, MA 02199
617-772-9272
sowens@firstam.com

BHN Associates LLC
240 Adar Ct.
Monsey, NY 10952
Attn: Samuel Blum
samuel@bhnassociates.com

/s/ *Benjamin M. Greene*
Benjamin M. Greene

5

COMMONWEALTH OF MASSACHUSETTS

SUFFOLK, SS                                      SUPERIOR COURT
                                                C.A. NO. 2184CV02248

_____

STAG WILLIAMSPORT, LLC,
        Plaintiff
                                                E-FILED 12/01/21  (LAW)
v.

BHN ASSOCIATES, LLC; FIRST AMERICAN TITLE
INSURANCE COMPANY; and, in rem CERTAIN
FUNDS HELD IN ESCROW BY THE BOSTON
OFFICE OF FIRST AMERICAN TITLE INSURANCE
COMPANY,
        Defendants
_____

### RESPONSE OF DEFENDANT FIRST AMERICAN TITLE INSURANCE COMPANY TO PLAINTIFF'S MOTION FOR ORDER TO DEPOSIT ESCROW FUNDS INTO COURT

NOW comes Defendant First American Title Insurance Company ("First American") and responds to Plaintiff's motion as follows:

1. First American is the Escrow Agent under an Escrow Agreement entered into between Plaintiff STAG Williamsport, LLC ("STAG") and Defendant BHN Associates, LLC ("BHN"). See Verified Complaint, Exhibit B.

2. Pursuant to the Escrow Agreement, First American has received $450,000.00 (the "Escrowed Funds"), which it currently holds in an interest-bearing account as required by the terms of the Escrow Agreement.

3. A controversy has arisen between STAG and BHN as to which of them the Escrowed Funds should be paid.

4. Conflicting demands and notices have been received by First American regarding the distribution of the Escrowed Funds.

5. Pursuant to First American's absolute right under the Escrow Agreement, First American withheld disbursement and stopped all further performance of the Escrow Agreement to permit a resolution between the parties.

6. Litigation has since been commenced between the parties which, pursuant to the terms of the Escrow Agreement, would allow First American to deliver the Escrowed Funds to the Clerk of the Court.

7. First American has no interest in the Escrowed Funds.

8. First American takes no position with regard to the merits of the dispute between the parties or either party's claims to the Escrowed Funds.

9. First American represents that it will promptly comply with an Order of the Court to deposit funds with the Clerk should such an Order issue; absent such an Order, First American will continue to hold the Escrowed Funds in accordance with the terms of the Escrow Agreement, pending mutual instructions from the parties or a subsequent Order of the Court.

I HEREBY ATTEST AND CERTIFY ON

Dec. 21, 2021, THAT THE
FOREGOING DOCUMENT IS A FULL,
TRUE AND CORRECT COPY OF THE
ORIGINAL ON FILE IN MY OFFICE,
AND IN MY LEGAL CUSTODY.

MICHAEL JOSEPH DONOVAN
CLERK / MAGISTRATE
SUFFOLK SUPERIOR CIVIL COURT
DEPARTMENT OF THE TRIAL COURT

BY:_____
Deputy Assistant Clerk

November 17, 2021

Respectfully submitted,
First American Title Insurance Company
By its attorney:

/s/ Scott C. Owens

Scott C. Owens, Esq. (BBO#654406)
First American Law Group
800 Boylston Street, Suite 2820
Boston, MA 02199
617-772-9272
sowens@firstam.com

**CERTIFICATE OF SERVICE**

I, Scott C. Owens, certify that on this 17th day of November, 2021, I caused a copy of the

forgoing document to be served on the following parties and/or their respective counsel of record

by electronic mail and/or first class mail.

STAG WILLIAMSPORT, LLC
c/o Benjamin M. Greene, Esq.
Arent Fox, LLP
Prudential Tower
800 Boylston Street
Boston, MA 02199-8004
Benjamin.Greene@arentfox.com

BHN Associates, LLC
240 Adar Ct.
Monsey, NY 10952
Attn: Samuel Blum
samuel@bhnassociates.com

/s/ Scott C. Owens
Scott C. Owens, Esq. (BBO#654406)

COMMONWEALTH OF MASSACHUSETTS
SUFFOLK COUNTY SUPERIOR COURT

| | |
|---|---|
| STAG WILLIAMSPORT, LLC, | Case No.: 2184-cv-2248 |
| Plaintiff, | |
| v. | E-FILED 12/05/2021 |
| BHN ASSOCIATES, LLC, FIRST AMERICAN TITLE INSURANCE COMPANY, and *in rem* against CERTAIN FUNDS HELD IN ESCROW BY THE BOSTON OFFICE OF FIRST AMERICAN TITLE INSURANCE COMPANY, | SL
U.S. Dist #
21-cv-11958 |
| Defendants. | |

## NOTICE OF FILING OF NOTICE OF REMOVAL

Defendant BHN Associates, LLC hereby gives notice that on December 5, 2021, it filed the

Notice of Removal attached hereto as Exhibit A in the United States District Court for the District of

Massachusetts in accordance with 28 U.S.C. § 1446.

Date: December 5, 2021

I HEREBY ATTEST AND CERTIFY ON
Dec. 21, 2021 THAT THE
FOREGOING DOCUMENT IS A FULL,
TRUE AND CORRECT COPY OF THE
ORIGINAL ON FILE IN MY OFFICE,
AND IN MY LEGAL CUSTODY.

MICHAEL JOSEPH DONOVAN
CLERK / MAGISTRATE
SUFFOLK SUPERIOR CIVIL COURT
DEPARTMENT OF THE TRIAL COURT
BY:
Deputy Assistant Clerk

Respectfully submitted,

*/s/ Alan D. Kaplan*
Alan D. Kaplan (BBO No. 258280)
Herrick, Feinstein LLP
2 Park Ave.
New York, NY 10016
p: (212) 592-1400
f: (212) 592-1500
e: akaplan@herrick.com

*Attorneys for Defendant BHN Associates, LLC*

UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| STAG WILLIAMSPORT, LLC, | Case No.: |
| Plaintiff, | Assigned Judge: |
| v. | **NOTICE OF REMOVAL** |
| BHN ASSOCIATES, LLC, FIRST AMERICAN TITLE INSURANCE COMPANY, and *in rem* against CERTAIN FUNDS HELD IN ESCROW BY THE BOSTON OFFICE OF FIRST AMERICAN TITLE INSURANCE COMPANY, | |
| Defendants. | |

**TO:   United States District Court**
**District of Massachusetts**

Pursuant to 28 U.S.C. §§ 1441 and 1446, Defendant BHN ASSOCIATES, LLC ("BHN")

submits this Notice of Removal from the Suffolk County Superior Court, Commonwealth of

Massachusetts, in which the above-captioned matter is now pending, to the United States District

Court for the District of Massachusetts.

In support of said Notice, BHN states as follows:

**PROCEDURAL HISTORY**

1.      This action involves an alleged Purchase and Sale Agreement ("PSA"), dated

June 7, 2021, between BHN and Plaintiff STAG WILLIAMSPORT, LLC ("STAG" or

"Plaintiff"), concerning the purchase of property located at 3300 Wahoo Drive, Williamsport,

Pennsylvania (the "Property"). STAG alleges that it is entitled to the release of $450,000

deposited by BHN into escrow with Defendant FIRST AMERICAN TITLE INSURANCE

COMPANY ("First American," and together with BHN, "Defendants") as "Earnest Money" and

"Extension Fees." A copy of the Complaint filed in Massachusetts state court (the "Complaint") is attached hereto as **Exhibit A**.

2.      First American filed an Answer to the Complaint on November 29, 2021, a copy of which is attached as **Exhibit B**. No other pleadings and/or orders have been filed in STAG's Massachusetts state court action. BHN received a copy of the Complaint on November 4, 2021. A copy of the complete docket of the Massachusetts state court action is attached to this Notice of Removal as **Exhibit C**.

3.      As set forth below, this case is properly removed to this Court pursuant to 28 U.S.C. §§ 1332, 1441, and 1446 because (a) this Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1332; (b) this Notice of Removal was filed timely pursuant to 28 U.S.C. § 1446(b)(3); and (c) BHN has satisfied the procedural requirements for removal.

**THIS COURT HAS SUBJECT MATTER JURISDICTION OVER THIS ACTION PURSUANT TO 28 U.S.C. § 1332.**

4.      This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1332 in that (a) there is complete diversity of citizenship between Plaintiff and Defendants, and (b) the amount in controversy exceeds the sum or value of $75,000, exclusive of interest and costs.

**A. Complete Diversity of Citizenship**

5.      There is complete diversity of citizenship between Plaintiff, a citizen of Massachusetts, and Defendants, who are citizens of New York and California.

6.      Plaintiff STAG is a Delaware limited liability company with a principal place of business at One Federal Street, 23rd Floor, Boston, Massachusetts. Ex. A, ¶ 1. Upon information and belief, STAG's sole member is STAG Industrial, Inc., a Maryland corporation whose principal executive office is located at One Federal Street, 23rd Floor, Boston, Massachusetts.

7.      Named Defendant BHN is a New York limited liability company with a principal place of business at 240 Adar Ct., Monsey, New York. Ex. A, ¶ 2. Each of its members is a natural person permanently residing in the State of New York.

8.      Named Defendant First American is allegedly a Delaware corporation. Ex. A, ¶ 3. However, upon information and belief, First American Title Insurance Company is in fact a Nebraska corporation. First American alleges that its principal business address is 1 First American Way, Santa Ana, California. *See* Ex. B, ¶ 1.

9.      Therefore, for purposes of determining diversity, STAG is a citizen of Massachusetts, whereas Defendants BHN and First American are citizens of New York and California, respectively. *See Pramco, LLC ex rel. CFCS Consortium v. San Juan Bay Marina*, 435 F.3d 51, 54 (1st Cir. 2006) (holding that the citizenship of a limited liability company is based on the citizenship of all of its members); *Hertz Corp. v. Friend*, 130 S.Ct. 1181, 1193, 559 U.S. 77 (2010) (holding that a corporation's principal place of business is "the place where a corporation's officers direct, control, and coordinate the corporation's activities"). Accordingly, complete diversity exists between the parties.[1]

**B.   Amount in controversy**

10.     The Complaint seeks, *inter alia*, an award of money damages in the amount of $450,000.00, plus costs, attorney's fees and interest. *See* Ex. A, "Wherefore," ¶ A.

11.     By virtue of this claim for money damages, Plaintiff is seeking damages in excess of the sum or value of $75,000, exclusive of interest and costs, which meets the jurisdictional

---

[1] Although STAG names "certain funds held in escrow by the Boston office of [First American]" as an "*in rem*" defendant in the caption of the Complaint, the location of such funds—which have not been deposited with the Suffolk County Superior Court—is irrelevant to diversity of citizenship. *See Navarro Savings Assn. v. Lee*, 446 U.S. 458, 461 (1980) ("a federal court must disregard nominal or formal parties and rest jurisdiction only upon the citizenship of real parties to the controversy").

requirement of this Court. *See* 28 U.S.C. §§ 1332(a); 1446(c)(2) ("the sum demanded in good faith in the initial pleading shall be deemed to be the amount in controversy").

12.     Accordingly, for all of the above-stated reasons, there is complete diversity between the parties, and the amount in controversy exceeds $75,000.00, exclusive of interest and costs. Therefore, this Court has subject matter jurisdiction over the instant matter pursuant to 28 U.S.C. § 1332.

### THIS NOTICE OF REMOVAL IS TIMELY PURSUANT TO 28 U.S.C. § 1446(b)(3).

13.     This Notice of Renewal is filed within thirty days of Defendants' receipt on November 4, 2021 of a copy of the Complaint. *See* 28 U.S.C. § 1446(b).

14.     For these reasons, this Notice of Removal is timely.

### DEFENDANTS HAVE SATISFIED THE PROCEDURAL REQUIREMENTS FOR REMOVAL.

15.     As discussed herein, this Court has subject matter jurisdiction on the basis of diversity of citizenship under 28 U.S.C. § 1332(a).

16.     Removal to the United States District Court for the District of Massachusetts is proper pursuant to 28 U.S.C. § 1441(a) because the state-court action is pending in the Suffolk County Superior Court, Commonwealth of Massachusetts. *See* Ex. A.

17.     This Notice of Removal is timely because it is being filed within thirty days of Defendants receiving a copy of the Complaint on November 4, 2021.

18.     First American has represented that it does not object to the removal of this action.

19.     Copies of all process, pleadings, and orders in the state court action have been attached hereto. *See* Exs. A, B, C.

20.     As required by 28 U.S.C. § 1446(d), a copy of the Notice of Removal is being

served upon Plaintiff and First American, by and through their attorneys of record, and is also

being filed with the clerk of the Suffolk County Superior Court, Commonwealth of

Massachusetts.

21.     By removing this action to this Court, BHN does not waive any available

defenses, including but not limited to improper venue, or admit any of the allegations made in

the Complaint.

**WHEREFORE**, BHN files this Notice of Removal so that the entire state court action

now pending in the Suffolk County Superior Court, Commonwealth of Massachusetts, be

removed to this Court for all further proceedings.

        Date: December 5, 2021

                                        Respectfully submitted,

                                        */s/ Alan D. Kaplan*
                                        Alan D. Kaplan (BBO No. 258280)
                                        Herrick, Feinstein LLP
                                        2 Park Ave.
                                        New York, NY 10016
                                        p: (212) 592-1400
                                        f: (212) 592-1500
                                        e: akaplan@herrick.com

                                        *Attorneys for Defendant BHN Associates,*
                                        *LLC*

## **<u>CERTIFICATE OF SERVICE</u>**

I hereby certify that a true copy of the above document was served upon the attorney of

record for each other party by filing it with the Court's electronic-filing system.


 */s/ Alan D. Kaplan*
Alan D. Kaplan

HF 14144362v.4