## UNITED STATE DISTRICT COURT
## FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| STAG WILLIAMSPORT, LLC,<br><br>                         Plaintiff,<br><br>      v.<br><br>BHN ASSOCIATES, LLC, FIRST AMERICAN TITLE INSURANCE COMPANY, and *in rem* against CERTAIN FUNDS HELD IN ESCROW BY THE BOSTON OFFICE OF FIRST AMERICAN TITLE INSURANCE COMPANY,<br><br>                    Defendants. | Civil Action No.<br>**1:21-cv-11958-NMG**<br><br>Assigned Judge: Nathaniel M. Gorton<br><br>**Leave to File Granted**<br>**on January 11, 2022 [Dkt 16]** |

## DEFENDANT BHN ASSOCIATES, LLC'S REPLY MEMORANDUM OF LAW IN FURTHER SUPPORT OF ITS MOTION TO DISMISS OR TRANSFER VENUE

The District of Massachusetts is not the proper venue to adjudicate this dispute, which arises from a contract for the sale of real property located in Pennsylvania. The material terms of the contract of sale—which is governed by Pennsylvania law and includes Pennsylvania forum selection clause (albeit nonexclusive)—were negotiated between defendant BHN Associates, LLC in New York and the seller STAG Williamsport, LLC's broker in Pennsylvania. All of BHN's complained-of actions under the contract were conducted in New York. And although the parties agreed to use First American Title Insurance Company, a national title company headquartered in California, as escrow agent, the involvement of First American's Boston office was at STAG's request.

If this action's connections to the District of Massachusetts are limited, BHN's contacts with this forum are virtually non-existent. BHN did not seek out STAG in Massachusetts, but

responded to an inquiry from STAG's broker in Pennsylvania, with whom it negotiated the material sale terms. BHN had no direct communications with STAG, in-person or otherwise, and never entered the Commonwealth of Massachusetts. BHN's counsel's communications with STAG and First American in Massachusetts, incidental to the performance of the contract in Pennsylvania, are insufficient to satisfy the constitutional and statutory requirements for this Court's exercise of personal jurisdiction over BHN.

STAG's opposition brief exaggerates the scope and significance of BHN's interactions with STAG and First American. According to STAG, by agreeing to purchase Pennsylvania property from a Massachusetts seller and sending deposits to a Massachusetts escrow agent, BHN purposefully availed itself of Massachusetts' laws and "reasonably expected" it would defend contract-related claims in Massachusetts' courts. STAG further argues that the mere presence of the escrow funds in Massachusetts is sufficient to confer jurisdiction, regardless of BHN's contacts with Massachusetts. These arguments are meritless.

I.      **The Presence of Disputed Escrow Funds in Massachusetts is Insufficient to Establish Jurisdiction Over BHN**

STAG is incorrect that because the Escrow Funds are located within Massachusetts, the Court has *in rem* or *quasi in rem* jurisdiction to adjudicate BHN's interests in the Escrow Funds regardless of whether the Court otherwise has personal jurisdiction over BHN. *See* Opp. [Dkt. 14], p. 6. But this broad theory of the Court's jurisdiction was rejected by the Supreme Court over forty years ago in *Shaffer v. Heitner*, 433 U.S. 186, 97 S.Ct. 2569, 53 L.Ed.2d 683 (1977), which extended the constitutional requirements of *International Shoe* to *in rem* and *quasi in rem* actions.

In *Shaffer*, the Supreme Court held unconstitutional a Delaware statute that allowed stock in a company that was incorporated in Delaware to be "sequestered" as a means of compelling

2

the personal appearance of a nonresident who was facing suit in the Delaware courts. *Id.* at 207.

The Supreme Court explained:

> The case for applying to jurisdiction *in rem* the same test of "fair play and substantial justice" as governs assertions of jurisdiction *in personam* is simple and straightforward. It is premised on recognition that the phrase, "judicial jurisdiction over a thing," is a customary elliptical way of referring to jurisdiction over the interests of persons in a thing. This recognition leads to the conclusion that in order to justify an exercise of jurisdiction *in rem*, the basis for jurisdiction must be sufficient to justify exercising "jurisdiction over the interests of persons in a thing." The standard for determining whether an exercise of jurisdiction over the interests of persons is consistent with the Due Process Clause is the minimum-contacts standard elucidated in *International Shoe*. *Id.* (internal quotations and citations omitted).

Although *Shaffer* dealt with a court's jurisdiction over property whose ownership was not in dispute, Courts in this district have since interpreted *Shaffer* as requiring a defendant to have constitutional minimum contacts with Massachusetts in order to exercise *quasi in rem*[1] jurisdiction to determine the defendant's interests in disputed property. *See, e.g.*, *FleetBoston Fin. Corp. v. FleetBostonFinancial.com*, 138 F. Supp. 2d 121, 134–35 (D. Mass. 2001) (declining to exercise *quasi in rem* jurisdiction over internet domain name registration certificate deposited in the Massachusetts court under Anticybersquatting Consumer Protection Act, where Brazilian resident defendant otherwise had insufficient contacts with Massachusetts). Thus, STAG's attempt to ground this Court's jurisdiction **solely** on the Escrow Funds' purported presence in Massachusetts must be rejected.

STAG cites no authority holding otherwise. In *United States v. One Lot of $25,721.00 in Currency*, 938 F.2d 1417 (1st Cir. 1991), which STAG incorrectly characterized as "holding" that "to assert *in rem* jurisdiction, the property at issue must be within the control of the court,"

---

[1] The difference between actions *in rem* and *quasi in rem* is that an *in rem* action determines rights in property for every potential rights holder, whereas a *quasi in rem* action allocates property rights as against particular named persons. *See FleetBoston*, 138 F. Supp. 2d at 132.

the First Circuit actually held that the U.S. Marshal's post-judgment execution of civil forfeiture funds (the *res* underlying the court's *in rem* jurisdiction) did not extinguish the First Circuit's jurisdiction to entertain an appeal of the judgment, because in bringing a civil forfeiture action the Government had consented to the court's exercise of personal jurisdiction. *See id.* at 1420. While it may be true that *in rem* jurisdiction requires the property's presence within the forum, nothing in *United States v. One Lot of $25,721.00 in Currency* suggests that such presence alone is sufficient to confer *quasi in rem* jurisdiction over a non-resident's interests in that property.

Nor can STAG find support in *Kenlon v. Kenlon*, No. CIV.A. 86-2415-MA, 1986 WL 14095 (D. Mass. Dec. 5, 1986). In *Kenlon*, the plaintiff commenced an action against her non-resident ex-husband to enforce a judgment for spousal support previously entered by a California state court. 1986 WL 14095, at *1. In connection with that action, the plaintiff obtained an order of trustee process attaching insurance proceeds held by a Massachusetts company that were owed to the defendant. The court held that "[s]uch an attachment of property within Massachusetts provides the Court with *quasi in rem* jurisdiction and may be the basis of a judgment enforceable against that property, even though the Court may not have personal jurisdiction over the defendant and cannot enter a personal decree against him." *Id.*

The holding in *Kenlon* is not an abrogation of *Shaffer* but an exception—explicitly recognized and accepted by the Supreme Court in *Shaffer* and the Massachusetts courts—for post-judgment enforcement proceedings. *See Shaffer*, 433 U.S. at 210 n.36 ("Once it has been determined by a court of competent jurisdiction that the defendant is a debtor of the plaintiff, there would seem to be no unfairness in allowing an action to realize on that debt in a State where the defendant has property, whether or not that State would have jurisdiction to determine the existence of the debt as an original matter."); *Desiano v. Envision Foods, Inc.*, 2017 WL

4

4872545, at *3–4 (Mass. Super. Sept. 21, 2017) (collecting cases from other jurisdictions and holding that personal jurisdiction is not required for post-judgment *quasi in rem* proceedings). The Massachusetts courts have reasoned that "constitutional due process requirements are satisfied where [the judgment debtor] has already had a full and fair process in the action which produced the underlying obligation and ensuing lien." *Desiano* 2017 WL 4872545, at *5.

Because STAG has not obtained a judgment against BHN, the minimum-contacts exception for post-judgment enforcement proceedings relied upon in *Kenlon v. Kenlon* is inapposite to this action. Thus, absent personal jurisdiction over BHN, this Court cannot exercise *quasi in rem* jurisdiction over the Escrow Funds consistent with *Shaffer*.

## II.    BHN's Deposit of Funds with a Massachusetts Escrow Agent Fails to Satisfy Massachusetts' Long-Arm Statute or Constitutional Due Process

As discussed in BHN's opening memorandum of law, STAG fails to allege facts sufficient to support this Court's exercise of personal jurisdiction over BHN. STAG's claims arise from BHN's refusal (while in New York) to close on a contract (materially negotiated between BHN in New York and STAG's broker in Pennsylvania) for the sale of property (located in Pennsylvania). *See* Mem. [Dkt. 8], pp. 5-8. It is immaterial and incidental that BHN deposited funds into escrow with "the Boston Office" of First American, which is a national title insurance company headquartered in California. BHN certainly did not thereby intend and anticipate that it would be hauled into Massachusetts to resolve disputes involving the closing of the Pennsylvania property sale.

STAG cites no controlling authority holding that a defendant's deposit of funds with a Massachusetts escrow agent constitutes sufficient minimum contacts to support personal jurisdiction in Massachusetts. Nor is BHN aware of any such authority.[2]

Courts outside the District of Massachusetts have held that the location of an escrow account, without more, cannot support minimum contacts. For example, in *Far W. Cap., Inc. v. Towne*, 46 F.3d 1071, 1075 (10th Cir. 1995), the Tenth Circuit held that the plaintiff's unilateral choice of Utah as the location of an escrow account and the defendant's subsequent transactions with the account could not serve as "purposeful availment" by the defendant. Likewise, in *Rolico Aviation Ltd. v. Mansfield Helifilght, Inc.*, No. CIV-07-1075-C, 2008 WL 640440, at *4 (W.D. Okla. Mar. 5, 2008), the District Court for the Western District of Oklahoma held that plaintiff failed to make prima facie showing of personal jurisdiction, because "[a]lthough the parties clearly contemplated and made use of the services of an Oklahoma escrow agent, that alone does not indicate 'purposeful availment' by defendants." The court in *Rolico* noted there was no evidence defendants had selected the escrow agent, and communications with the escrow agent in Oklahoma were limited and incidental to performance of the contract. *Id.*; *see also Dollar Sav. Bank v. First Sec. Bank of Utah, N.A.*, 746 F.2d 208, 209 (3d Cir. 1984) (holding that defendant's wire transfers with forum bank in connection with the parties' disputed loan agreements were insufficient to satisfy minimum contacts requirements).

Here, neither the Purchase and Sale Agreement itself nor the incorporated "Schedule 1 - Escrow Agreement" designated any particular office location of First American, much less the

---

[2] BHN is aware of one case, *Energy Cap. & Servs. LP, II v. Hill Refrigeration, Inc.*, 989 F. Supp. 353, 355 (D. Mass. 1997), in which the court found that a non-resident defendant's creation of an escrow account in Massachusetts, combined with years of routine, "sometimes daily" inquiries and communications with plaintiff in Massachusetts to effectuate defendant's ongoing performance of its ten-year contractual service obligations, were sufficient to establish minimum contacts and "transacting business" under Massachusetts' long-arm statute. By contrast here, BHN did not create an escrow account with a Massachusetts bank, and its communications with individuals in Massachusetts were irregular, infrequent, and incidental to the closing of the property in Pennsylvania.

Boston office, to serve as the escrow agent. *See* Kaplan Decl., Ex. A [Dkt. 7-1] (Sec. 1.9, Sch. 1). Rather, as in *Far W. Cap.*, the designation of the Boston office of First American was solely at STAG's request. *See* Wider Decl. [Dkt. 6], ¶ 8. Because the escrow agent's location was chosen by STAG and was not a material element contemplated by the contract, BHN's deposit of funds with First American's Boston office cannot satisfy the minimum contacts and "transacting business" requirements for this Court's exercise of personal jurisdiction over BHN.

For the foregoing reasons, BHN respectfully requests that the Court grant BHN's Motion to Dismiss pursuant to F.R.C.P. Rule 12(b) or to transfer this case pursuant to 28 U.S.C. § 1404(a) to the United States District Court for the Eastern District of Pennsylvania.

Dated: January 13, 2022

Respectfully submitted,

*/s/ Alan D. Kaplan*
Alan D. Kaplan (BBO No. 258280)
HERRICK, FEINSTEIN LLP
2 Park Ave.
New York, NY 10016
p: (212) 592-1400
f: (212) 592-1500
e: akaplan@herrick.com

*Attorneys for Defendant BHN Associates, LLC*

**<u>CERTIFICATE OF SERVICE</u>**

I certify that on January 13, 2022, a copy of the foregoing was filed electronically and served by mail on anyone unable to accept electronic filing. Notice of this filing will be sent by e-mail to all parties by operation of the Court's electronic filing system or by mail to anyone unable to accept electronic filing as indicated on the Notice of Electronic Filing. Parties may access this filing through the Court's CM/ECF System.

<em>/s/ Alan D. Kaplan</em>

Alan D. Kaplan

HF 14205590v.1