IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| STAG WILLIAMSPORT, LLC,<br><br>    Plaintiff-counterclaim defendant,<br><br>    v.<br><br>BHN ASSOCIATES, LLC,<br><br>    Defendant-counterclaim plaintiff and crossclaim plaintiff,<br><br>    -and-<br><br>FIRST AMERICAN TITLE INSURANCE COMPANY, and *in rem* against CERTAIN FUNDS HELD IN ESCROW BY THE BOSTON OFFICE OF FIRST AMERICAN TITLE INSURANCE COMPANY,<br><br>    Defendant and crossclaim defendant. | Case No. 1:21-cv-11958-NMG |

**DEFENDANT BHN ASSOCIATES, LLC'S
<u>ANSWER, COUNTERCLAIMS, AND CROSSCLAIMS</u>**

    Defendant BHN Associates, LLC ("BHN"), by its undersigned counsel, answers Plaintiff STAG Williamsport, LLC's ("STAG") complaint as follows:

    1.    BHN lacks knowledge or information sufficient to form a belief about the truth of the allegations in paragraph "1" of the complaint.

    2.    BHN admits the allegations in paragraph "2" of the complaint.

    3.    BHN lacks knowledge or information sufficient to form a belief about the truth of the allegations in paragraph "3" of the complaint.

4. The allegations in paragraph "4" of the complaint consist of legal conclusions to which no response is required. To the extent a response is required, BHN denies the allegations in paragraph "4" of the complaint.

5. The allegations in paragraph "5" of the complaint consist of legal conclusions to which no response is required. To the extent a response is required, BHN denies the allegations in paragraph "5" of the complaint.

6. The allegations in paragraph "6" of the complaint consist of legal conclusions to which no response is required. To the extent a response is required, BHN denies the allegations in paragraph "6" of the complaint.

7. BHN admits the allegation in paragraph "7" of the complaint that BHN executed the Purchase and Sale Agreement on June 7, 2021, and respectfully refers the Court to the Purchase and Sale Agreement for its contents. BHN otherwise denies the allegations contained in paragraph "7" of the complaint.

8. BHN respectfully refers the Court to the Purchase and Sale Agreement for its contents, and, to the extent any further response is necessary, BHN otherwise denies the allegations contained in paragraph "8" of the complaint.

9. BHN admits the allegations contained in paragraph "9" of the complaint.

10. BHN admits the allegation in paragraph "10" of the complaint that BHN deposited $100,000.00 with FATIC to be held in escrow, and respectfully refers the Court to the Purchase and Sale Agreement for its contents. BHN otherwise denies the allegations contained in paragraph "10" of the complaint.

11. BHN admits the allegation in paragraph "11" of the complaint that BHN extended the closing date for two separate periods of 15-days each and that BHN paid $75,000.00 on two

occasions to FATIC, and respectfully refers the Court to the Purchase and Sale Agreement for its contents. BHN otherwise denies the allegations contained in paragraph "11" of the complaint.

12. BHN states that paragraph "12" of the complaint purports to quote the Purchase and Sale Agreement, and respectfully refers the Court to the Purchase and Sale Agreement for its contents. BHN otherwise denies the allegations contained in paragraph "12" of the complaint.

13. BHN states that paragraph "13" of the complaint purports to quote the Purchase and Sale Agreement, and respectfully refers the Court to the Purchase and Sale Agreement for its contents. BHN otherwise denies the allegations contained in paragraph "13" of the complaint.

14. BHN states that paragraph "14" of the complaint purports to quote the Purchase and Sale Agreement, and respectfully refers the Court to the Purchase and Sale Agreement for its contents. BHN otherwise denies the allegations contained in paragraph "14" of the complaint.

15. BHN admits the allegations contained in paragraph "15" of the complaint.

16. BHN admits the allegation in paragraph "16" that BHN did not tender the purchase price on August 23, 2021, but denies that it had any obligation to do so. BHN otherwise denies the allegations contained in paragraph "16" of the complaint.

17. BHN states that the allegations in paragraph "17" purport to characterize correspondence between BHN and STAG, and respectfully refers the Court to such correspondence for its contents. BHN otherwise denies the allegations contained in paragraph "17" of the complaint.

18. BHN states that the allegations in paragraph "18" purport to characterize correspondence between BHN and STAG, and respectfully refers the Court to such correspondence for its contents. BHN otherwise denies the allegations contained in paragraph "18" of the complaint.

19. BHN states that the allegations in paragraph "19" purport to characterize correspondence between BHN and STAG, and respectfully refers the Court to such correspondence for its contents. BHN otherwise denies the allegations contained in paragraph "19" of the complaint.

20. BHN states that the allegations in paragraph "20" purport to characterize correspondence between BHN and STAG, and respectfully refers the Court to such correspondence for its contents. BHN otherwise denies the allegations contained in paragraph "20" of the complaint.

21. BHN states that the allegations in paragraph "21" purport to characterize correspondence between BHN and STAG, and respectfully refers the Court to such correspondence for its contents. BHN otherwise denies the allegations contained in paragraph "21" of the complaint.

22. BHN admits the allegation in paragraph "22" of the complaint that BHN did not tender the purchase price after receiving the document described in paragraph "22" as "the Notice of Default," but BHN denies that it had any obligation to do so. BHN otherwise denies the allegations contained in paragraph "22" of the complaint.

23. BHN states that the allegations in paragraph "23" purport to quote correspondence between STAG and BHN, and respectfully refers the Court to such correspondence for its contents. BHN otherwise denies knowledge or information sufficient to form a belief about the truth of the allegations contained in paragraph "23" of the complaint.

24. BHN states that the allegations in paragraph "24" purport to quote and/or characterize correspondence between STAG, BHN and defendant First American Title and Insurance Company, and respectfully refers the Court to such correspondence for its contents.

BHN otherwise denies knowledge or information sufficient to form a belief about the truth of the allegations contained in paragraph "24" of the complaint.

25. BHN states that the allegations in paragraph "25" purport to quote correspondence between BHN and STAG, and respectfully refers the Court to such correspondence for its contents. BHN otherwise denies the allegations contained in paragraph "25" of the complaint.

26. BHN denies knowledge or information sufficient to form a belief about the truth of the allegations contained in paragraph "26" of the complaint.

### IN ANSWER TO COUNT I: BREACH OF CONTRACT AGAINST BHN

27. BHN repeats and realleges as if fully set forth herein its responses to the allegations in paragraphs "1" to "26" of the complaint.

28. BHN admits the allegation in paragraph "28" of the complaint that BHN and STAG entered into the Purchase and Sale Agreement, and otherwise denies the allegations contained in paragraph "28" of the complaint.

29. BHN denies the allegations contained in paragraph "29" of the complaint.

30. BHN denies the allegations contained in paragraph "30" of the complaint.

31. BHN denies the allegations contained in paragraph "31" of the complaint.

### IN ANSWER TO COUNT II: BREACH OF THE IMPLIED COVENANT OF GOOD FAITH AND FAIR DEALING AGAINST BHN

32. BHN repeats and realleges as if fully set forth herein its responses to the allegations in paragraphs "1" to "31" of the complaint.

33. BHN admits the allegation in paragraph "33" of the complaint that BHN and STAG entered into the Purchase and Sale Agreement, and otherwise denies the allegations contained in paragraph "33" of the complaint.

34. BHN states that the allegations contained in paragraph "34" of the complaint consist of legal conclusions to which no response is required. To the extent a response is necessary, BHN denies the allegations contained in paragraph "34" of the complaint.

35. BHN denies the allegations contained in paragraph "35" of the complaint.

36. BHN denies the allegations contained in paragraph "36" of the complaint.

**IN ANSWER TO COUNT III: EQUITABLE RELIEF AGAINST FATIC**

37. BHN repeats and realleges as if fully set forth herein its responses to the allegations in paragraphs "1" to "36" of the complaint.

38. BHN respectfully refers the Court to the Purchase and Sale Agreement for its contents, and, to the extent any further response is necessary, BHN otherwise denies the allegations contained in paragraph "38" of the complaint.

39. BHN denies the allegations contained in paragraph "39" of the complaint.

40. BHN states that paragraph "40" of the complaint appears to consist of a typographical error to which no response is required. To the extent a response is necessary, BHN denies the allegations contained in paragraph "40" of the complaint.

41. BHN denies knowledge or information sufficient to form a belief about the truth of the allegations contained in paragraph "41" of the complaint.

42. BHN denies the allegations contained in paragraph "42" of the complaint.

**DEFENSES**

As separate and distinct defenses to the complaint, BHN, without conceding that it bears the burden of proof as to any of them, alleges the following defenses:

**First Defense: Failure to State a Claim**

43. The complaint fails to state a claim upon which relief can be granted.

### Second Defense: Lack of Personal Jurisdiction

44. The Court lacks personal jurisdiction over BHN.

### Third Defense: Laches

45. STAG's claims are barred, in whole or in part, by the doctrine of laches.

### Fourth Defense: Waiver

46. STAG's claims are barred, in whole or in part, by the doctrine of waiver.

### Fifth Defense: Estoppel

47. STAG's claims are barred, in whole or in part, by the doctrine of estoppel.

### Sixth Defense: Unclean Hands

48. STAG's claims are barred, in whole or in part, by the doctrine of unclean hands.

### Seventh Defense: STAG's Breach of Contract

49. To the extent that STAG sustained any alleged damages, which BHN expressly denies, it was caused by STAG's own culpable conduct, wrongdoing, breaches, omissions and/or failures to act. In particular, STAG's claims are barred by its own material breaches of the Purchase and Sale Agreement.

### Eighth Defense: Unjust Enrichment

50. STAG would be unjustly enriched if allowed to recover on any of its claims.

### COUNTERCLAIMS

51. Defendant BHN, by its undersigned counsel, for its counterclaims against Plaintiff STAG alleges as follows:

### JURISDICTION AND VENUE

52. The Court has subject matter jurisdiction over BHN's counterclaims under 28 U.S.C. § 1332 because BHN and STAG are citizens of New York and Massachusetts,

respectively, and the amount in controversy exceeds $75,000, exclusive of interest and costs, and under 28 U.S.C. § 1367(a) because the counterclaims are so related to STAG's claims that they form part of the same case or controversy under Article III of the United States Constitution.

53. Venue is proper in this district under 28 U.S.C. § 1391(b)(2), in that a substantial part of the property that is the subject of the action is situated in this district.

## PARTIES

54. Defendant and Counterclaim-plaintiff BHN Associates, LLC ("BHN" or "Buyer") is a limited liability company formed under the laws of the State of New York with a principal place of business at 240 Adar Ct., Monsey, New York. Each of BHN's members is a natural person permanently residing in the State of New York.

55. Plaintiff and Counterclaim-defendant STAG Williamsport, LLC ("STAG" or "Seller") is a limited liability company formed under the laws of the State of Delaware with a principal place of business at One Federal Street, 23rd floor, Boston, Massachusetts. Upon information and belief, STAG's sole member is STAG Industrial, Inc., a Maryland corporation whose principal executive office is located at One Federal Street, 23rd Floor, Boston, Massachusetts.

## FACTS

**The Purchase and Sale Agreement**

56. On or about June 7, 2021, BHN entered into a Purchase and Sale Agreement ("PSA") with STAG to purchase the property located at 3300 Wahoo Drive, Williamsport, Pennsylvania (the "Property").

57. Pursuant to the PSA, BHN and STAG agreed to close on the sale of the Property on August 23, 2021 (the "Closing Date").

58. Section 6.7 of the PSA imposed various obligations on STAG as conditions to BHN's obligation to consummate the acquisition of the Property on the Closing Date.

59. First, Section 6.7(a)(3) of the PSA required STAG to deliver "all of the items referred to in Section 6.3." Sections 6.3(m) and 6.3(n) of the PSA, in turn, required STAG to deliver to First American Title and Insurance Company ("FATIC") for the benefit of BHN, "in a form reasonably acceptable to [BHN]," among other things, an "original executed Tenant Estoppel Certificate to the extent not previously delivered to [BHN]" and "[a]n original or certified copy of the Lease."

60. The term "Estoppel Certificate" was defined in Section 1.10 of the PSA as follows:

> Estoppel Certificate: Seller shall use commercially reasonable efforts to obtain Tenant's execution of an Estoppel Certificate in the form attached hereto as Exhibit B (with such modifications as may be reasonably requested by the Tenant), at least five (5) days prior to the Closing Date. In no event shall Seller's inability to obtain an executed Estoppel Certificate constitute default by Seller hereunder, provided that delivery of an Estoppel Certificate from Tenant shall be a condition to Buyer's obligation to purchase the Property as provided in Section 6.7(a)(5) below.

61. The term "Lease" was defined in Section 1.16 of the PSA as follows:

> Lease: The Lease between Moran Industries, Inc. and Tenant dated July 22, 2011, pursuant to which Tenant has the right to occupy the Improvements as affected by that certain Sublease ("Sublease") between Tenant and Subtenant dated as of April 10, 2019 (the Lease and Sublease are collective referred to as the Lease.

62. Section 6.7(a) of the PSA also required that BHN receive, as a condition to its obligation to close, "an Estoppel Certificate executed by the Tenant and subtenant in form reasonably acceptable to Buyer or as otherwise provided herein."

63. Section 1.25 of the PSA defined the term "Tenant" as "FTS International Services, LLC in its capacity as tenant."

64. Section 1.26 of the PSA defined the term "Subtenant" as "Shop Vac Corporation, in its capacity as subtenant."

65. In addition to an executed Estoppel Certificate in the appropriate form, the Section 6.7(a) of the PSA required that BHN receive, as a condition to its obligation to close, "an SNDA executed by the Tenant in a form reasonably acceptable to the Lender."

66. The term "SNDA" was defined in Section 1.21 of the PSA as follows:

> SNDA: Buyer shall have the right to deliver to Seller a form of subordination, attornment and non-disturbance agreement (the "SNDA") which is reasonably satisfactory to Buyer's lender. As a condition precedent to Buyer closing under this Agreement, an SNDA for the Tenant must be delivered to Buyer no later than ten (10) business days prior to the Closing.

67. The PSA therefore required as a precondition to BHN's obligation to close, among other things, that (i) STAG deliver to FATIC an original executed Estoppel Certificate and Lease, as those terms are defined in the PSA; (ii) BHN receive a copy of the Estoppel Certificate executed by FTS International Services, LLC and Shop Vac Corporation; and (iii) BHN receive ten business days prior to closing an SNDA in a form reasonably satisfactory to BHN's lender.

68. Section 6.7(c) of the PSA provided the following procedure by which STAG could obtain up to a 30-day adjournment of the Closing Date:

> In the event any of the Buyer Closing Conditions shall not be satisfied as of the Closing Date, Seller may, at Seller's option, adjourn the Closing Date on a one-time basis for a period not exceeding thirty (30) days to allow Seller additional time to satisfy the Buyer's Closing Conditions. […]

69. If STAG did not exercise its option to extend the Closing Date, Section 12.1 of the PSA provided the following procedure by which BHN could terminate the PSA and receive a refund of the funds BHN deposited into escrow:

> Buyer's Pre-Closing Remedies. Subject to the provisions of the last sentence of this Section 12.1, if the purchase and sale of the Property pursuant to this Agreement

does not occur by reason of Seller's default in its obligations hereunder or due to Seller's breach of any representation or warranty contained in this Agreement, and Seller fails to cure such default or breach as per the provisions of this Agreement within five (5) Business Days after receipt of notice of default from Buyer, the parties hereto agree that Buyer's sole remedy shall be limited to either: (a) the termination of this Agreement by written notice delivered to Seller, in which even the Earnest Money shall be promptly refunded to Buyer (not to be conditioned in any way on the prior consent of the Seller); […].

70. Additionally, the Section 17.3 of the PSA provides that the prevailing party in any litigation arising out of the PSA is entitled to recover from the losing party its reasonable attorney's fees and costs.

**STAG's Breaches of the PSA**

71. BHN deposited a total of $450,000.00 into escrow with FATIC, which was to be applied towards the purchase price at closing pursuant to the PSA.

72. Pursuant to the PSA, BHN was entitled to a refund of the funds BHN deposited into escrow with FATIC in the event that BHN terminated the PSA because of STAG's failure to satisfy BHN's closing conditions.

73. On August 5, 2021, BHN's counsel sent to STAG's counsel a form of Estoppel Certificate and SNDA for STAG to execute and deliver pursuant to the PSA.

74. On August 11, 2021, STAG's counsel sent BHN's counsel proposed revisions to the Estoppel Certificate and SNDA reflecting its tenant's comments.

75. BHN did not accept these proposed revisions. Instead, on August 17, 2021, BHN's counsel sent STAG's counsel responses and changes to the Estoppel Certificate and SNDA that BHN had received from its Lender.

76. STAG did not respond to the August 17th email or otherwise indicate that there was any issue with the forms of Estoppel Certificate and SNDA that BHN had sent.

77. Instead, on August 23, 2021, STAG's counsel sent to BHN's counsel an estoppel certificate and SNDA that were signed by the acting general counsel of FTS International LLC. These documents were in the form that STAG's counsel had proposed to BHN on August 11, 2021, but had not been accepted by BHN.

78. BHN's counsel sent an email to STAG's counsel on August 23, 2021, advising that the signed Estoppel Certificate and SNDA were not in a form that were acceptable to BHN and its lender as required by the PSA. BHN's counsel referred STAG's counsel to the forms of Estoppel Certificate and SNDA that BHN's counsel had provided on August 17, 2021.

79. As of 3:00 p.m. E.S.T. on August 23, 2021, STAG had failed to satisfy its obligations under the PSA, as follows (the "Unsatisfied Closing Conditions"):

   a. BHN had not received an Estoppel Certificate, in a form reasonably acceptable to BHN, that was executed by FTS International Services, LLC and Shop Vac Corporation.

   b. STAG had not delivered to FATIC an original copy of an Estoppel Certificate, in a form reasonably acceptable to BHN, that was executed by FTS International Services, LLC.

   c. STAG had not delivered to FATIC an original copy of the Lease.

   d. BHN had not received an SNDA executed by FTS International Services, LLC in a form that was reasonably acceptable to BHN's lender.

80. STAG never adjourned the Closing Date to perform the Unsatisfied Closing Conditions.

81. On September 9, 2021, BHN's counsel sent a letter via E-Mail and Federal Express addressed to Alan Simmons, Senior Vice President and Assistant General Counsel of STAG, copying FATIC, advising that STAG had failed to deliver the items required by the PSA and failed to satisfy the conditions precedent to BHN's obligation to close under the PSA. The

September 9, 2021 letter further advised that BHN was exercising its right to terminate the PSA and immediately receive the return of the funds it deposited into escrow with FATIC.

### FIRST COUNTERCLAIM
### (Breach of Contract Against STAG)

82. BHN repeats and realleges paragraphs "51" through "81" hereof, as if fully set forth herein.

83. BHN and STAG entered into the PSA, a binding contract.

84. By its conduct, STAG materially breached the PSA.

85. As a result of STAG's material breaches of the PSA, BHN has suffered monetary damages which it is entitled to recover in an amount to be determined at trial, but not less than $450,000.00, plus interest, costs, and attorney's fees.

### SECOND COUNTERCLAIM
### (Declaratory Judgment against STAG)

86. BHN repeats and realleges paragraphs "51" through "85" hereof, as if fully set forth herein.

87. BHN, STAG and FATIC entered into an escrow agreement in connection with the PSA.

88. Pursuant to the escrow agreement, BHN deposited the sum of $450,000.00 into an escrow account held by FATIC.

89. As a result of STAG's material breaches of the PSA and BHN's subsequent termination of the PSA, BHN is entitled to return of the funds it deposited into escrow with FATIC.

90. BHN has demanded that FATIC return the escrow funds to BHN.

91. FATIC has failed and refused to return the escrow funds to BHN.

92. An actual controversy has arisen between BHN, STAG and FATIC as to the rights, duties, responsibilities and obligations of the parties in that BHN contends and FATIC and STAG dispute and deny that (i) STAG is not entitled to release of the escrow funds, and (ii) BHN is entitled to release of the escrow funds.

93. BHN continues to suffer injury and is at risk of future loss as a result of FATIC's failure to return the escrow funds to BHN.

## CROSSCLAIMS

94. Defendant-crossclaim plaintiff BHN, by its undersigned counsel, for its crossclaims against defendant-crossclaim defendant FATIC, alleges as follows:

## JURISDICTION

95. The Court has subject matter jurisdiction over BHN's claims under 28 U.S.C. § 1332 because BHN and FATIC are citizens of New York and California, respectively, and the amount in controversy exceeds $75,000, exclusive of interest and costs, and under 28 U.S.C. § 1367(a) because BHN's crossclaims are so related to the STAG's claims that they form part of the same case or controversy under Article III of the United States Constitution.

## PARTIES

96. BHN is a limited liability company formed under the laws of the State of New York with a principal place of business at 240 Adar Ct., Monsey, New York. Each of BHN's members is a natural person permanently residing in the State of New York.

97. FATIC is a corporation formed under the laws of the States of Nebraska with a principal business address at 1 First American Way, Santa Ana, California.

## FIRST CROSSCLAIM
**(Declaratory Judgment against FATIC)**

98. BHN repeats and realleges paragraphs "51" through "97" hereof, as if fully set forth herein.

99. BHN, STAG and FATIC entered into an escrow agreement in connection with the PSA.

100. Pursuant to the escrow agreement, BHN deposited the sum of $450,000.00 into an escrow account held by FATIC.

101. As a result of STAG's material breaches of the PSA and BHN's subsequent termination of the PSA, BHN is entitled to return of the funds it deposited into escrow with FATIC.

102. BHN has demanded that FATIC return the escrow funds to BHN.

103. FATIC has failed and refused to return the escrow funds to BHN.

104. An actual controversy has arisen between BHN, STAG and FATIC as to the rights, duties, responsibilities and obligations of the parties in that BHN contends and FATIC and STAG dispute and deny that (i) STAG is not entitled to release of the escrow funds, and (ii) BHN is entitled to release of the escrow funds.

105. BHN continues to suffer injury and is at risk of future loss as a result of FATIC's failure to return the escrow funds to BHN.

**WHEREFORE**, Defendant-counterclaim plaintiff BHN respectfully requests that the Court enter judgment as follows:

A. Dismissing STAG's claims.

B. On BHN's First Counterclaim, awarding damages in favor of BHN, in an amount to be determined at trial, but in no event less than $450,000.00, please interest, costs, and attorneys' fees.

C. On BHN's Second Counterclaim, a declaration that (i) STAG is not entitled to release of the funds BHN deposited into escrow with FATIC, and (ii) BHN is entitled to release of the funds BHN deposited into escrow with FATIC.

D. On BHN's First Crossclaim, a declaration that (i) STAG is not entitled to release of the funds BHN deposited into escrow with FATIC, and (ii) BHN is entitled to release of the funds BHN deposited into escrow with FATIC.

E. Awarding BHN its reasonable costs and fees, including attorneys' fees.

F. Granting BHN such other and further relief as the Court deems just and proper.

**DEFENDANT-COUNTERCLAIM PLAINTIFF BHN HEREBY REQUESTS A TRIAL BY JURY ON ALL ISSUES SO TRIABLE**

Respectfully submitted,

BHN ASSOCIATES, LLC

By their attorneys,


/s/ Patrick L. Marinaro
William C. Nystrom (BBO #559656)
Patrick L. Marinaro (BBO #683280)
NYSTROM BECKMAN, & PARIS LLP
One Marina Park Drive, 15th Floor
Boston, Massachusetts 02210
Tel:   (617) 778-9100
Fax:   (617) 778-9110
wnystrom@nbparis.com
pmarinaro@nbparis.com


Avery Mehlman (*pro hac vice forthcoming*)
Joshua Herman (*pro hac vice forthcoming*)
HERRICK, FEINSTEIN LLP
2 Park Avenue
New York, New York 10016
(212) 592-1400
(212) 545-3424
amehlman@herrick.com
jherman@herrick.com


Dated:  August 31, 2022

**CERTIFICATE OF SERVICE**

 I hereby certify that this document filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) and paper copies will be sent to those indicated as non-registered participants on this 31st day of August, 2022.

                 /s/ Patrick L. Marinaro